UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JULIAN RUBINSTEIN, Individually and on Behalf of All Others Similarly Situated, | Case No.  1:19-cv-01069-VEC |
| Plaintiff, | |
| vs. | |
| CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, CREDIT SUISSE SECURITIES (USA) LLC, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, and JANUS DISTRIBUTORS LLC, | |
| Defendants. | |

---

**LEAD PLAINTIFF MOVANTS' MEMORANDUM OF LAW
IN RESPONSE TO THE COURT'S MAY 15, 2019 ORDER (ECF. NO. 25)**

Movants Barbara Antinoro ("Antinoro") and David Fleer ("Fleer" and, with Antinoro, the "ZIV Investor Group") and Plaintiff Julian Rubinstein (with the ZIV Investor Group, collectively referred to herein as "Plaintiffs"), by their undersigned counsel, respectfully submit this memorandum of law in response to the Court's May 15, 2019 Order (ECF No. 25) explaining why their appointment as a group of lead plaintiffs would serve the interests of the putative class in the above-captioned action (the "Action") and providing further details regarding Plaintiff Rubenstein's financial interests in the relief sought by the class.

## INTRODUCTION

This Action is on behalf of persons who purchased or otherwise acquired VelocityShares Daily Inverse VIX Medium-Term ("ZIV") exchange-traded notes ("ETN") between June 30, 2017 and February 5, 2018 (the "Class Period"), seeking remedies under the Securities Act of

1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  Dkt. No. 1 ("Complaint") ¶ 1.  The price of ZIV declined alongside sharp declines in the price of the related VIX index occurring on February 5, 2018 and February 6, 2019.  *See* Complaint ¶¶ 38-43.

Securities Act claims, which offer a superior opportunity for investor recovery, are subject to a limitations period of one year from the date the alleged wrongdoing should have been discovered—here, based on the Complaint's allegations, no later than February 5, 2019. Although Plaintiff Rubinstein's filing of the Complaint tolled the statute of limitations for absent class members, it did so only for their individual claims and not with respect to their ability to act as class representatives with respect to those claims.  Accordingly, Plaintiff Rubinstein is the only movant, based upon the Complaint's allegations, with standing to pursue the Securities Act claims as a class representative in this Action.

As attested to in their Joint Declaration submitted herewith, the ZIV Investor Group has a larger financial interest in this action than Plaintiff Rubinstein, and its members, Antinoro and Fleer, have a meaningful pre-litigation relationship that informed their decision to seek appointment in the Action jointly as co-lead plaintiffs.  *See* Declaration of Jeremy A. Lieberman ("Lieberman Decl."), Ex. A ¶ 12.  Because Antinoro and Fleer each lack standing to pursue Securities Act claims on a class-wide basis, they agreed to join with Rubinstein in a group for the purpose of efficiently litigating this action in order to achieve the maximum recovery possible, including through the Securities Act claims asserted in the Complaint.

Plaintiffs have already convened two telephonic meetings—one with counsel and one without counsel—and discussed mechanisms for effectively managing this class action litigation

including, without limitation, what actions will be taken in the event the Plaintiffs are unable to reach agreement with respect to litigation decisions. *Id.* ¶¶ 5-7.

For these reasons, as set forth in greater detail below, Plaintiffs respectfully submit that the Plaintiffs' appointment as co-lead plaintiffs in this action would serve the interest of the class, and respectfully request that the Court enter the stipulation and proposed order previously submitted by Plaintiffs (ECF No. 18).

## ARGUMENT

### A. The Original Grouping of Antinoro and Fleer Together in the ZIV Investor Group Was Appropriate

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599, 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015), upon which this Court based its May 15, 2019 Order, refused to allow two union pension funds to aggregate their losses in a lead plaintiff motion because they did not: (1) have a pre-existing relationship; (2) an adequate plan for cooperation; and (3) show that their grouping was not the product of lawyer-driven litigation. *Id.* at *2 (citing *Varghese v. China Shenghou Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).

Here, the original grouping of Antinoro and Fleer implicates none of the foregoing issues. Antinoro and Fleer have a relationship that pre-dates this litigation. They first met one another at the Balboa Park Tennis Club in San Diego, California, and have since established a meaningful friendship based upon their shared interest in, *inter alia*, tennis, social issues, and current events. *See* Lieberman Decl., Ex. A ¶ 12. Their grouping was ***not*** lawyer driven. Rather, following the events described in the Complaint, Antinoro and Fleer discussed the merits of the litigation with one another, sought out counsel, spoke to attorneys, and opted to retain Pomerantz LLP ("Pomerantz") to file a motion on their behalves seeking appointment as lead plaintiffs. *Id.*

Finally, as discussed below, Antinoro and Fleer have an adequate plan together with Plaintiff Rubinstein for cooperating in litigating this class Action.  *See* Section C.3, *infra*.

**B.  Including Plaintiff Rubinstein as a Co-Lead Plaintiff Best Serves the Interests of the Class**

Appointing more than one lead plaintiff is appropriate "if such a grouping would best serve the class."  *FXCM*, 2015 WL 7018024, at *2.  Courts routinely appoint "co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group" when doing so is in the best interests of the class.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 419 (S.D.N.Y. 2004); *see also* Lieberman Decl., Ex. B, *Schiro v. Cemex, S.A.B. de C.V.*, 1:18-cv-02352-VEC, Order, ECF No. 35 at 2 (S.D.N.Y. June 7, 2018) ("Notwithstanding the applicants' shifting and self-serving positions, the Court believes appointment of the applicants as co-lead plaintiffs will best serve the interests of the class.").

As previously stated, the Complaint in the Action asserts both Securities Act and Exchange Act claims.  The Securities Act claims, however, offer a significant litigation benefit to the class because, unlike the claims arising under the Exchange Act, Securities Act claims do not require proof or even any allegations of reliance or scienter. *See, e.g.¸ Herman & MacLean v. Huddleston,* 459 U.S. 375, 382 (1983); *Rombach v. Chang,* 355 F.3d 164, 169 n.4 (2d Cir. 2004); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 368 (S.D.N.Y. 2011).

Securities Act claims, however, are subject to a more stringent limitations period of "one year after the discovery of the untrue statement or the omission, or after discovery should have been in the exercise of reasonable diligence."  15 U.S.C. §77m (2019).  Here, as discussed above, Plaintiff Rubinstein filed the Complaint asserting the Securities Act claims in a timely fashion based upon the limitations period expiring on February 5, 2019.  *See* p. 2, *supra.*  In doing so, Plaintiff Rubinstein tolled the limitations period for all absent class members.  *See,*

*e.g.*, *Holbrook v. Trivago N.V.*, No. 17 CIV. 8348 (NRB), 2019 WL 948809, at *10 (S.D.N.Y. Feb. 26, 2019) (extending a deadline for service because "requiring plaintiffs to refile the action would implicate statute of limitations issues, as claims made under Section 11 of the Securities Act must be brought within one year of the discovery of the allegedly untrue statement or omission.").

The Supreme Court recently unequivocally held that tolling of the limitations period only extends to claims brought by other class members on an individual basis but not to their ability to bring those claims on behalf of other absent class members. *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1808 (2018). Accordingly, of the Plaintiffs, only Plaintiff Rubinstein has standing to pursue Securities Act claims as a class representative on behalf of other absent class members. That is a potentially significant advantage to the class in pursuing the claims alleged in the Complaint.

### C.   Plaintiffs Are A Sufficiently Cohesive Group to Jointly Serve as Co-Lead Plaintiffs

Courts in this District have generally looked to the following five factors to determine whether a group of plaintiffs is sufficiently cohesive to serve as lead plaintiff: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of the group members; and (5) whether the members chose outside counsel, and not vice versa." *FXCM*, 2015 WL 7018024, at *2-3 (citing *Varghese*, 589 F.Supp.2d at 392) (paragraph breaks omitted). Here, applying those factors demonstrates that Plaintiffs are not "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff[.]'" *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001). Instead, as explained below, the Plaintiffs include the movants with the largest financial interest in this litigation ***and*** the movant who unquestionably has standing to pursue Section 11

claims as a class representative.  Therefore, their appointment as Co-Lead Plaintiffs would best serve the interests of the class.

### 1.  Two of the Three Group Members Possess A Pre-Litigation Relationship

As discussed above and as attested to in the Plaintiffs' Joint Declaration, Movants Barbara Antinoro and David Fleer have a pre-litigation relationship, having formed a meaningful friendship over the past several years.  Lieberman Decl., Ex. A ¶ 12.  The ZIV Investor Group invited Plaintiff Rubinstein to join them for the reasons discussed above, namely because in seeking to represent all ZIV investors, they deem it to be in the best interest of the Class to form a lead plaintiff group able to plead and prosecute Securities Act claims as effectively as possible, and they recognize that Plaintiff Rubinstein's participation will allow them to do so.  Plaintiff Rubinstein's lack of a pre-litigation relationship with Antinoro and Fleer is not dispositive, and courts routinely appoint groups of unrelated investors upon finding them otherwise adequate. *See, e.g., Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven unrelated shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 17-CV-4846 (WFK) (PK), 2017 U.S . Dist. LEXIS 207531, at *13 (E.D.N.Y. Dec. 15, 2017).  That Rubinstein is joining the group not to create a larger aggregate loss, but rather so that the group may better serve the interests of the Class, further supports appointing Plaintiffs as co-lead plaintiffs despite his lack of a pre-litigation relationship with Antinoro and Fleer.

### 2.  Involvement of Plaintiffs in the Litigation Thus Far Supports Their Serving as Co-Lead Plaintiffs

Plaintiffs have been actively involved in this litigation to date.  Plaintiff Rubinstein sought out counsel and caused this Action to be filed.  Lieberman Decl., Ex. A ¶ 9.  After

learning of the Action, Antinoro and Fleer discussed the merits of the litigation with one another, sought out counsel, spoke to attorneys, and caused a motion to be filed on their behalves seeking appointment as co-lead plaintiffs. *Id.* ¶ 12. All three movants have attested to their commitment to zealously prosecute the Action. *Id.* ¶ 4. They have discussed this litigation with one another and with counsel, including, *inter alia*, their shared views concerning litigation strategy and procedures, how to effectively manage the litigation, their common interest in serving as lead plaintiffs, and how to resolve any potential dispute among them with respect to litigation decisions. *See id.* ¶¶ 5-7.

### 3. Plaintiffs' Plan for Cooperation Supports Their Serving as Co-Lead Plaintiffs

The downfall of many proposed groupings of lead plaintiffs is a perfunctory and conclusory submission regarding plans for future cooperation. *See FXCM*, 2015 WL 7018024, at *4 (citing *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Amer. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011); *Varghese*, 589 F. Supp.2d at 394). Here, any such concerns should be alleviated because, as attested to in their Joint Declaration, the Plaintiffs have "a coherent plan for dividing responsibilities, resolving conflicts, and managing the litigation." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015). Their plan for cooperation includes communicating regularly with one another and with their counsel, an agreed-upon dispute-resolution mechanism with respect to litigation decisions, and their well-articulated reasons for believing that the combined resources and expertise of two law firms serving as co-lead counsel would benefit the class. *See* Lieberman Decl., Ex. A ¶¶ 5-8.

### 4. Plaintiffs' Sophistication Supports Their Serving as Co-Lead Plaintiffs

Plaintiffs are sophisticated investors. Plaintiff Rubenstein is an Investment Advisor Representative with over 20 years of hands on business and investment management experience,

and the founder and president of American Asset Management, Inc., and has advised individuals and corporations on their investments and 401(k) plans since 1994. *See id.* ¶ 9. Antinoro has been investing in the securities markets since 1972, while Fleer has been investing in the securities markets for approximately 15 years. *See id.* ¶¶ 10-11. Plaintiffs' sophistication supports their being appointed to serve as co-lead plaintiffs.

### 5. That Plaintiffs Chose Their Counsel Supports Their Serving as Co-Lead Plaintiffs

Plaintiffs chose their own counsel. Plaintiff Rubenstein sought out counsel, spoke to attorneys, and decided to retain Abraham, Fruchter & Twersky, LLP ("AF&T") to file the action following the events described in the Complaint. *Id.* ¶ 9. Antinoro and Fleer, after discussing the merits of the litigation with one another, sought out counsel, spoke to attorneys, and decided to retain Pomerantz to file a lead plaintiff motion on their behalves. *Id.* ¶12. That Plaintiffs chose their own counsel supports their being appointed to serve as co-lead plaintiffs.

### D. Plaintiff Rubinstein's Financial Interest

In addition, pursuant to the Order's instructions, Plaintiff Rubinstein is providing further details with respect to the amount of his alleged losses. Specifically, Plaintiff Rubinstein purchased a total of 1,248 ZIV shares during the class period; made net purchases of 296 shares; expended net funds of $96,335.80; and suffered FIFO losses of approximately $5,405.40 and LIFO losses of approximately $3,911.10.[1] *See* Lieberman Decl., Ex. C.

Plaintiff Rubinstein's financial interest is greater than that of many other investors who have been appointed as lead plaintiffs in securities fraud actions. *See, e.g.*, *Plumbers &*

---

[1] These four factors are the ones which Courts in this District use to determine the financial interest of a lead plaintiff. *See FXCM*, 2015 WL 7018024, at *2 (citing *Varghese*, 589 F. Supp. 2d at 394-95).

*Pipefitters Local 51 Pension Fund v. First Bancorp.*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (granting the motion of two individuals to serve as lead plaintiffs and granting the motion of a pension fund that had sustained losses of "less than $2,000" to serve as a co-lead plaintiff); *Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2019 WL 1437160, at *12 (S.D.N.Y. Mar. 31, 2019) (appointing a lead plaintiff with losses of approximately $1,422.99 in a PSLRA action); *Vanamringe v. Royal Group Technologies Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006) (appointing investor group as lead plaintiff in a PSLRA action where it suffered losses of $6,466.74).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the stipulation and proposed order previously submitted on April 24, 2019 (ECF No. 18) appointing them as co-lead plaintiffs and approving their selection of counsel as co-lead counsel.

Dated: May 31, 2019

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

*Counsel for Barbara Antinoro and David Fleer and*
*Proposed Co-Lead Counsel for the Class*

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham
Michael J. Klein
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email:  jabraham@aftlaw.com
Email:  mklein@aftlaw.com

*Counsel for Julian Rubinstein and*
*Proposed Co-Lead Counsel for the Class*