**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JULIAN RUBINSTEIN, BARBARA ANTINORO
and DAVID FLEER Individually and on Behalf of
All Others Similarly Situated,

                              Plaintiffs,

        v.

CREDIT SUISSE GROUP AG, CREDIT SUISSE
AG, CREDIT SUISSE SECURITIES (USA) LLC,
TIDJANE THIAM and DAVID R. MATHERS,

                             Defendants.

Case No. 1:19-cv-01069-VEC

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

<table>
<tr><td align="center"><b>ABRAHAM, FRUCHTER &amp;<br>TWERSKY, LLP</b><br>Jeffrey S. Abraham<br>Michael J. Klein<br>One Penn Plaza, Suite 2805<br>New York, New York 10119</td><td align="center"><b>POMERANTZ LLP</b><br>Jeremy A. Lieberman<br>600 Third Avenue, 20th Floor<br>New York, New York 10016</td></tr>
</table>

*Attorneys for Lead Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................................... 1

SUMMARY OF RELEVANT FACTS ............................................................................................. 2

    The Mid-Term VIX Index ................................................................................................. 2

    ZIV and Credit Suisse AG's Hedging Activities .............................................................. 3

    Assets Devoted to Similar Inverse VIX Strategies Overwhelm Needed Market
        Liquidity .................................................................................................................. 4

    Too Much Money Devoted to the Inverse VIX Strategy Causes Plaintiffs to Suffer
        Losses ...................................................................................................................... 4

    The Registration Statement Failed to Properly Disclose the Relevant Adverse Facts ....... 5

ARGUMENT ..................................................................................................................................... 6

    I.      PLAINTIFFS PLAUSIBLY ALLEGE SECURITIES ACT CLAIMS
            ARISING FROM DEFENDANTS' FAILURE TO DISCLOSE
            MATERIAL FACTS ............................................................................................ 6

          A.     Plaintiffs Plausibly Allege That the Registration Statement Failed to
               Disclose Material Facts .................................................................................... 8

          B.     Plaintiffs Plausibly Allege the Materiality of the Undisclosed Facts .......... 11

          C.     Defendants Were Obligated to Disclose These Material Facts Based
               Upon Other Disclosures Made in the Registration Statement as Well
               as SEC Rules ................................................................................................. 13

              1.      Defendants Were Obligated to Disclose All Material Facts
                    Relating to ZIV Without Regard to Whether the Relevant
                    Information was "Firm-Specific" .................................................. 13

              2.      Defendants Fail to Demonstrate That the Undisclosed Facts
                    Were Part of the "Total Mix of Information" Known to
                    Plaintiffs ....................................................................................... 15

              3.      Defendants Also Owed a Separate and Independent
                    Affirmative Duty to Disclose Based Upon Governing SEC
                    Regulations ................................................................................... 17

          D.     The Undisclosed Information Existed at the Time of the Registration
                Statement ...................................................................................................... 18

II.    PLAINTIFFS PLAUSIBLY ALLEGE LOSS CAUSATION EVEN
       THOUGH IT IS NOT AN ELEMENT OF A SECTION 11 CLAIM .................. 18

III.   PLAINTIFFS PLAUSIBLY ALLEGE CONTROL PERSON CLAIMS ............ 20

CONCLUSION ............................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.*,
No. 13-CV-5586 (VEC), 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014) .................. *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 6

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
928 F. Supp. 2d 705 (S.D.N.Y. 2013).................................................................... 19

*Cooperman v. Individual, Inc.*,
171 F.3d 43 (1st Cir. 1999)...................................................................................... 7

*Cosmas v. Merrill Lynch & Co.*,
No. 92 Civ. 6560 (KC), 1993 WL 800778 (S.D.N.Y. July 2, 1993) ........................... 13, 14

*DiBlasio v. Novello*,
344 F.3d 292 (2d Cir. 2003).................................................................................. 12

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
No. 08 Civ. 10475 (JGK), 2010 WL 1983375 (S.D.N.Y. May 17, 2010)........................ 11

*Garber v. Legg Mason Inc.*,
347 F. App'x 665 (2d Cir. 2009) .......................................................................... 16

*Halbert v. Credit Suisse AG*,
402 F. Supp. 3d 1288 (N.D. Ala. 2019)................................................................. 16

*Halperin v. ebanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002).................................................................................... 8

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).................................................................................................. 7

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).................................................................... 21

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................................... 9

*In re Coty Inc. Sec. Litig.*,
No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)............................. 18

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) .............................................................................. 20

*In re Deutsche Bank AG Sec. Litig.*,
　No. 09 CV 1714 (DAB), 2016 WL 4083429 (S.D.N.Y. July 25, 2016) .......................... 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
　643 F. Supp. 2d 562 (S.D.N.Y. 2009) ....................................................................... 18, 19

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
　236 F. Supp. 3d 824 (S.D.N.Y. 2017) ............................................................................. 9

*In re Initial Pub. Offering Sec. Litig.*,
　358 F. Supp. 2d 189 (S.D.N.Y. 2004) ........................................................................... 10

*In re Lehman Bros. Sec. & Erisa Litig.*,
　799 F. Supp. 2d 258 (S.D.N.Y. 2011) ........................................................................... 11

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
　272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................................... 16

*In re Morgan Stanley Info. Fund Sec. Litig.*,
　592 F.3d 347 (2d Cir. 2010) ........................................................................................... 7

*In re NovaGold Res. Inc. Sec. Litig.*,
　629 F. Supp. 2d 272 (S.D.N.Y. 2009) ............................................................................. 6

*In re Prudential Sec. Inc. Ltd. P'ships. Litig.*,
　930 F. Supp. 68 (S.D.N.Y. 1996) .................................................................................... 9

*In re Refco, Inc. Sec. Litig.*,
　503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................................................... 21

*In re TVIX Sec. Litig.*,
　25 F. Supp. 3d 444 (S.D.N.Y. 2014) ............................................................................. 14

*In re Vivendi, S.A. Sec. Litig.*,
　838 F.3d 223, 262 (2d Cir. 2016) .................................................................................. 20

*Johnson v. Priceline.com, Inc.*,
　711 F.3d 271 (2d Cir. 2013) ............................................................................................ 6

*Kapps v. Torch Offshore, Inc.*,
　379 F.3d 207 (2004) ................................................................................................. 13, 14

*Keiler v. Harlequin Enters., Ltd.*,
　751 F.3d 64 (2d Cir. 2014) .............................................................................................. 6

*Kronfeld v. Trans World Airlines, Inc.*,
　832 F.2d 726 (2d Cir. 1987) .......................................................................................... 15

*Levine v. AtriCure, Inc.*,
    508 F. Supp. 2d 268 (S.D.N.Y. 2007)................................................................................ 18

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011).................................................................................... 12, 15

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ....................................................................................... 9

*Mass Ret. Sys. v. CVS Caremark Corp.*,
    716 F.3d 229 (1st Cir. 2013)........................................................................................ 20

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
    80 F. Supp. 2d 41 (E.D.N.Y. 2011) ............................................................................ 15

*McKenna v. Smart Techs. Inc.*,
    No. 11 Civ. 7673 (KBF), 2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ........................... 21

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)...................................................................................... 8, 9

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013)..................................................................................... 7, 15

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) .................................................................................... 7

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)........................................................................................... 19

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012)............................................................................ 6, 7, 12, 18

*Phillips v. Kidder, Peabody & Co.*,
    933 F. Supp. 303 (S.D.N.Y. 1996),
    *aff'd,* 108 F.3d 1370 (2d Cir. 1997) ...................................................................... 13, 14

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009)........................................................................... 21

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)......................................................................................... 9

*Sawabeh Info. Servs. Co. v. Brody*,
    832 F. Supp. 2d 280 (S.D.N.Y. 2011)........................................................................... 15

*Schlaifer Nance & Co. v. Estate of Warhol*,
    199 F.3d 91 (2d Cir. 1997)........................................................................................... 15

*Set Capital LLC v. Credit Suisse Group AG,*
    No. 18-CV-2268 (AT) (SN), 2019 WL 3940641 (S.D.N.Y. Aug. 16, 2019),
    *aff'd*, 2019 WL 4673433 (S.D.N.Y. Sept. 25, 2019) ....................................................... 2, 9

*Sharette v. Credit Suisse Int'l,*
    127 F. Supp. 3d 60 (S.D.N.Y. 2015)............................................................................ 12, 19

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.,*
    941 F. Supp. 1369 (S.D.N.Y. 1996)................................................................................... 21

*Stadnick v. Vivint Solar, Inc.,*
    861 F.3d 31 (2d Cir. 2017)................................................................................................. 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)............................................................................................................. 7

*United Paperworkers Int'l Union v. Int'l Paper Co.,*
    985 F.2d 1190 (2d Cir. 1993............................................................................................. 15

*Wilson v. Merrill Lynch & Co.,*
    671 F.3d 120 (2d Cir. 2011)............................................................................................... 11

**Statutes**

15 U.S.C. §77k.......................................................................................................................... 6

15 U.S.C. §77k(a) .................................................................................................................... 17

15 U.S.C. §78i(e) ...................................................................................................................... 7

15 U.S.C. §78j(b) ...................................................................................................................... 7

15 U.S.C. §78u-4(b)............................................................................................................. 7, 18

**Other Authorities**

Brief of the Securities and Exchange Commission *Amicus Curiae* in Support of Appellant on
    Issues Addressed, *Kapps v. Torch Offshore, Inc.,*
    2003 WL 23873976 (5th Cir.) ......................................................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 6

Fed. R. Civ. P. 8(a)(2)...................................................................................................... 6, 7, 8

Fed. R. Civ. P. 9(b) ......................................................................................................... 7, 17

Lead Plaintiffs Julian Rubenstein, Barbara Antinoro, and David Fleer ("Plaintiffs"), by their undersigned counsel, respectfully submit this memorandum of law in opposition and in response to Defendants' motion to dismiss the Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

There was too much money invested in VelocityShares Daily Inverse VIX Medium-Term Exchange Notes ("ZIV") along with similar exchange traded products ("ETPs") designed to inversely track the S&P 500 Mid-term VIX Index ("SPVIXMTR" or the "Mid-Term VIX Index"). As a result, any material increase in the SPVIXMTR was certain to overwhelm the liquidity constraints of the underlying VIX Futures market independently causing the SPVIXMTR to continue to rise and Plaintiffs additional losses. On February 5, 2018, that is exactly what happened, with the daily price insensitive rebalancing of risks causing the prices of VIX Futures to which the SPVIXMTR was tied to spiral out of control.

Defendants seek to disclaim liability primarily based upon risk disclosures contained in the ZIV's registration statement (the "Registration Statement") acknowledging that daily rebalancing of risks "could" affect the SPVIXMTR. However, those disclosures did not effectively warn Plaintiffs of the existing fact that too much money was chasing the same strategy in the same manner and would independently impact the VIX Futures upon which the SPVIXMTR was based in the event of any material upward movement in the Mid-Term VIX Index. As a result, Plaintiffs have properly alleged a claim under the very liberal pleading standard for claims arising under Section 11 of the Securities Act of 1933 (the "Securities Act"), the only primary claim alleged in this action.

The high-water mark in Defendants' effort to obtain dismissal is the very recent decision in the *Set Capital*[1] case dismissing claims brought by investors purchasing another security sold through the Registration Statement. However, *Set Capital* involves a different security with a different risk profile and alleges claims based on fraud rather than the strict liability or negligence standard governing Plaintiffs' claims. In addition, *Set Capital*'s analysis of effective disclosure of the relevant facts through the "total mix of information" analysis is contrary to controlling principles of law as previously explained by this Court in *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014) (Caproni, J.), and, in any event, not applicable to the facts of this action.

## SUMMARY OF RELEVANT FACTS

**The Mid-Term VIX Index**

The Volatility Index ("VIX") is designed to measure investors' expectation of future volatility in the Standard and Poor's 500 Index ("SPX"), a broad-based index representative of the stock market, by averaging the weighted prices of call and put options over a wide range of strike prices. Complaint ¶¶12, 14. Investors cannot directly invest in the VIX because it is only a measurement rather than an actual security. Complaint ¶¶14, 17. Instead, investors can purchase VIX future contracts ("VIX Futures") which trade over a seven-month expiration period. Complaint ¶15. The VIX Futures are settled on a single day based upon the difference between the VIX Index on that day and the strike price for the VIX Futures contract. *Id.*

The Mid-Term VIX Index measures the return of a daily rolling position of VIX Futures expiring in four, five, six and seven months. Complaint ¶18. The Mid-Term VIX Index is linked

---

[1]   *Set Capital LLC v. Credit Suisse Group AG,* No. 18-CV-2268 (AT) (SN), 2019 WL 3940641 (S.D.N.Y. Aug. 16, 2019) (Report & Recommendation), *aff'd*, 2019 WL 4673433 (S.D.N.Y. Sept. 25, 2019), *appeal pending*.

2

to the trading prices of VIX Futures on the spot level of the VIX, and contracts are rolled forward or replaced, daily, to maintain SPVIXMTR's target. PS-16. SPVIXMTR is less popular and less widely followed than the S&P 500 VIX Short-Term Futures Index ("SPVIXSTR"), which measures VIX Futures expiring in the one- and two-month periods. The Mid-Term VIX Index is also less volatile in price than the VIX. Complaint ¶18.

**ZIV and Credit Suisse AG's Hedging Activities**

ZIV is designed to inversely track SPVIXMTR, *i.e.,* it increases in value as the Mid-Term VIX Index declines and decreases in value as the Mid-Term VIX Index goes up in value. Complaint ¶19. ZIV does not, however, represent an interest in the underlying VIX Futures making up its portfolio, as is the case with traditional mutual funds. Instead, ZIV is an exchange traded note ("ETN") representing a senior obligation of defendant Credit Suisse AG, inversely tracking the value of Mid-Term VIX Futures Index, for which ZIV owners can demand payment at any time. Complaint ¶29; PS-Cover at 1.

Credit Suisse AG, in turn, hedged its debt obligations with respect to ZIV by rebalancing its portfolio around the same time each trading day, from late afternoon until approximately 4:15 pm Eastern. Complaint ¶40. Credit Suisse AG was "price-insensitive" when it hedged its obligations because it could pass losses to ZIV by purchasing or selling the number and type of VIX Futures necessary to rebalance its portfolios regardless of price and the related impact of its hedging activities on the Mid-Term VIX Index. Complaint ¶41.

The size of the daily rebalance or, put another way, the amount of VIX Futures which Credit Suisse AG needed to purchase or sell, was proportional to the principal amount of its ZIV ETN obligation and the size of the movement in SPVIXMTR. Larger price increases in SPVIXMTR required purchasing or selling ever increasing amounts of VIX Futures in order to fully hedge Credit Suisse AG's exposure to ZIV ETNs. Complaint ¶28.

3

**Assets Devoted to Similar Inverse VIX Strategies Overwhelm Needed Market Liquidity**

The stock market, as reflected by the SPX, has been experiencing a period of historically low volatility, causing inverse VIX instruments, essentially a bet against stock market volatility, to perform well. Complaint ¶35. This performance caused a substantial increase in assets under management ("AUM") by ZIV and other similar ETPs pursuing the same investment strategy with the same need for daily rebalancing pushed the size of their potential rebalancing requirements to unprecedented levels. Complaint ¶36.

However, the VIX Futures market did not have adequate volume for Credit Suisse AG and other ETP sponsors employing the same inverse strategy as ZIV to rebalance their portfolios in the event of any material increase in SPVIXMTR. Complaint ¶38. As a result, any large movement in SPVIXMTR would independently cause additional losses as ETP sponsors snapped up VIX Futures, regardless of price, rebalancing their exposures. Complaint ¶¶38-41.

Too much money invested in a VIX strategy requiring daily rebalancing had been previously demonstrated to cause a disproportionate change in VIX Futures pricing in late market trading. Complaint ¶33. This included decreases of more than 30% in the value of VelocityShares Daily Inverse VIX Short-Term ETN ("XIV") in August 2011, August 2015, and June 2016 and a 6% decrease in the value of the ZIV in June 2016. Complaint ¶¶33-34.

**Too Much Money Devoted to the Inverse VIX Strategy Causes Plaintiffs to Suffer Losses**

On Monday, February 5, 2018, a liquidity gap in VIX Futures materialized when the SPX fell approximately 4% amid concerns about rising bond yields and higher inflation. Complaint ¶47. Historically, the 4% decline was unremarkable as it was less than half the greatest single-day decline in the S&P 500 Index over the last 30 years. *Id.* By 4:00 pm Eastern time, SPVIXMTR had risen approximately 12.3%, from a prior day settlement value of 11,130.55, to approximately

4

12,500.  Complaint ¶48.  ZIV's share price fell a roughly equivalent 14.5%, from the prior daily close of $85.41, to $74.54 as of 4:00 pm Eastern.  *Id.*

Between 4:00 pm and 4:15 pm Eastern, sponsors of ZIV and other similar ETPs rebalanced their portfolios by purchasing hundreds of millions of dollars of VIX Futures.  Complaint ¶49. This caused the market to spiral out of control, with the prices of the VIX Futures contracts making up SPVIXMTR materially increasing over the prior trading days' settlement price which, in turn, drove down ZIV's Indicative Value, resulting in a feedback loop requiring the purchase of yet more VIX Futures contracts by sponsors of ZIV and other volatility related ETPs, causing ZIV's NAV to decline further.  Complaint ¶¶39, 49-51.  As a result, the next morning, ZIV opened at $65.00, representing a more than 12.5% decline from the prior close of $74.54.  Complaint ¶51.

**The Registration Statement Failed to Properly Disclose the Relevant Adverse Facts**

The Registration Statement failed to disclose that increasing sums of money, *i.e.,* the AUM, invested in ZIV and similar ETPs based upon an inverse relationship tied to SPVIXMTR, would overwhelm market liquidity in the case of any material SPX volatility and related changes in the prices of VIX Futures.  Complaint ¶¶62 and 65.  Investors in ZIV did not have access to non-public predictive models, sophisticated analytical tools, or the massive amounts of data (which included proprietary and non-public data) necessary to comprehend the true risks of ZIV and how SPVIXMTR would perform in stress scenarios.  Complaint ¶46.  Instead, all they had was a vague warning in the Registration Statement of the risk that hedging activities by Credit Suisse AG and other sponsors of similar ETPs "**may impair the value**" of SPVIXMTR.  Complaint ¶58.

Sophisticated market participants quickly recognized the inadequacy of the relevant disclosures when Blackrock, Inc., the world's biggest provider of exchange traded funds, reiterated a call for regulation that would clearly spell out the risks associated with inverse and leveraged

ETPs.  Complaint ¶52.  Similarly, Fidelity, one of the country's largest discount brokers, halted investor purchasers of ZIV in order to protect investors.  Complaint ¶54.[2]

## ARGUMENT

Securities Act claims are governed by Fed. R. Civ. P. 8(a)(2)'s notice pleading standard, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 283 (S.D.N.Y. 2009).  Fed. R. Civ. P. 12(b)(6) only requires that "'a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief.'"  *Alpha Capital Anstalt*, 2014 WL 6466994, at *6 (quoting *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  "'[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.'"  *Alpha Capital Anstalt,* 2014 WL 6466994, at *6 (quoting *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014)).

## I.   PLAINTIFFS PLAUSIBLY ALLEGE SECURITIES ACT CLAIMS ARISING FROM DEFENDANTS' FAILURE TO DISCLOSE MATERIAL FACTS

Section 11 of the Securities Act imposes liability on certain persons participating in a securities offering where, as here, a registration statement filed with the SEC contains material misstatements or omissions.  *See, e.g.*, *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing 15 U.S.C. §77k).  Plaintiffs "need not allege scienter, reliance, or loss causation."  *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109,

---

[2]   Recent developments in a related antitrust MDL suggest that any potential manipulation at issue (*e.g.* Complaint ¶¶21-27) occurred almost entirely on the final settlement (expiration) day of VIX options and futures.  *See In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation*, Case: 1:18-cv-04171 (N.D. Ill.), ECF No. 281 at 7-8.  Since the damages in this case do not arise from settlement on that expiration date, Plaintiffs are no longer pursuing claims relating to the failure to disclose SPVIXMTR being subject to manipulation.  *See* Complaint ¶59(b).

120 (2d Cir. 2013). Instead, liability for untrue statements of material fact or for omitting to state a material fact required to be disclosed is "virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) (footnote omitted); *see also Panther Partners*, 681 F.3d at 119-20 (referring to the liability provisions as having an "*interrorem* nature") (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).

The elements of a Section 11 claim are that: (a) the Registration Statement contained an omission; (b) the omission was material; (c) defendants were under a duty to disclose the omitted material information; and (d) the information existed at the time the Registration Statement became effective. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002) (citing *Cooperman v. Individual, Inc.,* 171 F.3d 43, 47 (1st Cir. 1999)); *see also N.J. Carpenters Health Fund*, 709 F.3d at 120. Here, Plaintiffs have properly alleged each of these elements.

In contrast, the plaintiffs in *Set Capital* premised their action primarily, if not entirely, on manipulation claims arising under Sections 9(e) and 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78i(e) and 78j(b). *Set Capital*, 2019 WL 3940641, at *1. Such claims are subject to the heightened pleading requirements of Section 21D(b) of the Exchange Act, 15 U.S.C. §78u-4(b), and Fed. R. Civ. P. 9(b). *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) ("plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"). In contrast, the Securities Act claims asserted by Plaintiffs need only comply with the "short and plain statement of the claim" required by Fed. R. Civ. P. 8(a). *N.J. Carpenters Health Fund*, 709 F.3d at 120.

Indeed, Defendants in *Set Capital* argued that the plaintiffs had "virtually abandon[ed] their Section 11 claim" by "devot[ing] little more than a single page of their 50-page brief to defending the adequacy of their Section 11 claim," which "merely track[ed] the language of Section 11,"

7

"thereby conceding an independent basis for dismissal under Rule 8[.]" Credit Suisse Defendants' Reply Memorandum of Law in Further Support of the Motion to Dismiss the Class Action Complaint for Failure to State a Claim at 12-13, *Chahal v. Credit Suisse Grp. AG,* No. 18-cv-02268 (AT) (SN) (S.D.N.Y. Jan. 17, 2019), ECF No. 116.  Here, in contrast, Defendants concede that the Plaintiffs do not allege fraudulent conduct.  Defs. Memo. at 7-8.

### A. Plaintiffs Plausibly Allege That the Registration Statement Failed to Disclose Material Facts

Defendants contend that they adequately disclosed the impact of hedging activities associated with the daily rebalancing of ZIV's risks by stating that they "***may*** adversely affect the market price of such underlying futures" and "***may*** adversely affect the market price of such underlying futures contracts and in turn the level of the applicable underlying Index." Defs. Memo. at 11 (quoting PS-28 and PS-16-17) (emphasis added).  However, neither of those statements disclose that the "the amount of assets under management of ZIV and similar ETPs tied to daily rebalancing of risks exceeded the amount of volume that could be traded in the event of market volatility without independently adversely affecting the relationship between the value of ZIV and [] SPVIXMTR."  Complaint ¶¶59(a), 62(a) and (c).

As a result, the risk disclosures upon which Defendants rely fail to meet the exacting standard requiring that "*no reasonable investor* could have been misled about the nature of the risk when he invested."  *Halperin v. ebanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002) (emphasis in original).  Instead, the Registration Statements' risk disclosures are insufficient because they are "generic warning[s] . . . when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability."  *Meyer v. Jinkosolar Holdings Co.,* 761 F.3d 245, 251 (2d Cir. 2014).  "To be meaningful, a cautionary statement must discredit the alleged misrepresentations to such an extent that the risk of real deception drops to nil."  *In re Bear Stearns*

*Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 495 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 246-47 (5th Cir. 2009) (cautionary language was not meaningful where the warning did not "disclose the specific risks *and their magnitude*") (emphasis added); *In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 831 (S.D.N.Y. 2017) ("generalized disclosures of potential risks are . . . insufficient to shield Defendants from their obligation to disclose known risks that had already materialized") (citations omitted).

*Jinkosolar* is on point. There, the Second Circuit held that failing to disclose alleged existing pollution problems was "not cured by the additional statement that non-compliance with the environmental regulations may be very costly." *Id.* at 251. The Court explained that "[a]lthough this statement warned of a financial risk to the company from environmental violations, the failure to disclose then-ongoing and serious pollution violations would cause a reasonable investor to make an overly optimistic assessment of the risk." *Id.* Here too, risks of market movements were disclosed but *without* disclosing that existing AUM devoted to ZIV and other similar ETPs would independently cause additional changes in SPVIXMTR damaging Plaintiffs and other ZIV investors. Complaint ¶59.[3]

*Set Capital*, upon which Defendants heavily rely, is also not on point because the plaintiffs there alleged that "Credit Suisse knew its hedging activity had adversely affected the price in the past and that it was certain to adversely [a]ffect it again." 2019 WL 3940641 at *12. Here,

---

[3] *See also Rombach v. Chang,* 355 F.3d 164, 173 (2d Cir. 2004) (risk disclosures do not absolve "someone who warns his hiking companion to walk slowly because there *might* be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.") (emphasis added); *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("even apparently specific risk disclosures like those in Polaris' prospectus are misleading if the risks are professionally stamped in internal undisclosed analyses (as they were here) as significantly greater or more certain than those portrayed in the prospectus.").

however, unlike in *Set Capital*, Plaintiffs' claim does *not* depend upon Defendants' knowledge of past market activity. Instead, the gravamen of Plaintiffs' claim is that the VIX Futures market lacked the necessary liquidity to handle the rebalancing and hedging associated with ZIV and other ETNs without independently adversely affecting ZIV's value. Complaint ¶¶59(a), 62(a) and (c).

The other disclosure upon which Defendants seek to rely is made in the context and under a heading that "**[t]he market price of your ETNs may be influenced by many *unpredictable factors*.**" PS-21 (bold emphasis in original, italics added). The excessive amount of assets invested in ZIV and similar ETPs, however, was not an "unpredictable factor." Instead, it was the very essence of a predictable factor existing at the time of the Registration Statement. As a result, the underlying disclosure of unpredictability cannot insulate Defendants from liability. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 211-12 (S.D.N.Y. 2004) ("Generalized disclosures of amorphous risks will not shield defendants from liability as the cautionary language must be 'too prominent and specific to be disregarded' and must 'warn investors of exactly the risk that plaintiffs claim was not disclosed.'") (citation omitted).

Similarly unavailing is Defendants' effort to rely on the generalized disclosure that "the market for the VIX futures [is] subject to temporary distortions or other disruptions due to various factors, including the lack of liquidity in the markets, the participation of speculators, and government regulation and intervention." PS-26 (quoted in Defs. Memo. at 17). That disclosure states the obvious because it is axiomatic that all markets are subject to temporary disruptions and distortions. However, what is missing from the Registration Statement is a clear statement of the existing fact that the VIX Futures market lacked the necessary liquidity to handle the rebalancing and hedging associated with ZIV and other ETNs without independently adversely affecting ZIV's

10

value – not some hypothetical discussion of a generalized ***potential*** for market disruption in some unknown circumstances.

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011), upon which Defendants rely, is not on point. In *Wilson,* the plaintiff alleged that Merrill Lynch failed to disclose having intervened in auctions for a particular security, creating a false impression of demand. However, those allegations ignored that Merrill Lynch "disclosed that it would 'routinely' bid on its own account and that it 'may routinely' place such bids for the purpose of preventing auctions from failing . . . ." *Id*. at 135. In other words, the very facts alleged to have been omitted were disclosed. Here, in contrast, the Registration Statement fails to disclose that the VIX Futures market lacked the necessary liquidity to support rebalancing of Credit Suisse's hedge with respect to ZIV if SPVIXMTR advanced materially in price.

### B. Plaintiffs Plausibly Allege the Materiality of the Undisclosed Facts

A misstatement or omission is actionable under the securities laws if it is material, that is, if there is a "substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]." *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 279-80 (S.D.N.Y. 2011). "[M]ateriality determination 'depends on all relevant circumstances' and a 'complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id*. at 280 (footnotes omitted). Materiality determinations are rarely appropriate at the motion to dismiss stage because it involves weighing factual evidence. *See*, *e.g.*, *Ellenburg v. JA Solar Holdings Co.*, No. 08 Civ. 10475 (JGK), 2010 WL 1983375, at *1 (S.D.N.Y. May 17, 2010) ("The Court's function on a motion to dismiss is 'not to weigh the evidence . . . but merely to determine whether the complaint

11

itself is legally sufficient.'"); *DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003) (holding that "a disputed issue of fact . . . is inappropriate to consider in the context of a 12(b)(6) motion").

Defendants do not, nor could they reasonably, dispute the materiality of the undisclosed facts at issue in this action. Indeed, any such attempt would be foolhardy as Plaintiffs plausibly allege that Credit Suisse's hedging volume, and the increased AUM complained of, were material because they "might reasonably be expected to materially impact" ZIV's value, and that the volume of price-insensitive hedging were known trends or uncertainties that Defendants should have expected to have an impact on ZIV's price. *Panther Partners*, 681 F.3d at 121; *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 719 (2d Cir. 2011). Indeed, the drop in the price of ZIV on February 5, 2018 (*see* Complaint ¶¶48, 51), standing alone, adequately supports Plaintiffs' allegations of materiality. *See, e.g.*, *Sharette v. Credit Suisse International*, 127 F. Supp. 3d 60, 104 (S.D.N.Y. 2015) (concluding plaintiffs had alleged a plausible inference of loss causation when they alleged that when "concealed conditions and events materialized," the price of their investments decreased).

Credit Suisse's peers have recognized the disclosures made in the Registration Statement and for similar investment products were lacking. Blackrock reiterated a call for regulation that would clearly spell out the risks associated with inverse and leveraged ETPs. Complaint ¶52. Nomura Holdings issued a public apology after investors in its short term VIX futures note were all but wiped out, and later publicly acknowledged it had failed to fully explain the risks of its investments. Complaint ¶53, 55. Fidelity halted investor purchasers of various VIX related ETPs, including ZIV, in order to protect investors. Complaint ¶54.

**C. Defendants Were Obligated to Disclose These Material Facts Based Upon Other Disclosures Made in the Registration Statement as Well as SEC Rules**

Defendants also seek to disclaim their obligation to disclose the facts at issue in this action by contending that: (1) they were not required to disclose the conduct of other market participants; (2) they were not required to disclose the relevant facts because they were already publicly known; and (3) they had no obligation under Regulation S-K to disclose the information at issue. Defendants are in error on all three points.

**1. Defendants Were Obligated to Disclose All Material Facts Relating to ZIV Without Regard to Whether the Relevant Information was "Firm-Specific"**

Defendants' contention that they were only required to disclose "firm specific" information – whatever that means with respect to ZIV – in the Registration Statement has been rejected by the SEC in a previous *amicus* filing made with the U.S. Court of Appeals for the Fifth Circuit, where it unequivocally stated that the materiality standard is not limited to information which is firm-specific. *See* Brief of the Securities and Exchange Commission *Amicus Curiae* in Support of Appellant on Issue Addressed at 13, *Kapps v. Torch Offshore, Inc.*, No. 03-30227, 2003 WL 23873976 (5th Cir. June 9, 2003) ("*Kapps* Amicus Brief"). As a result, the Fifth Circuit, rejected the precise "firm-specific" disclosure limitation Defendants seek to impose in this action. *See, e.g.*, *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213, 215 (5th Cir. 2004) (cited in *Alpha Capital Anstalt*, 2014 WL 6466994, at *9 & n.17).

*Cosmas v. Merrill Lynch & Co.*, No. 92 Civ. 6560 (KC), 1993 WL 800778 (S.D.N.Y. July 2, 1993)*, and *Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303 (S.D.N.Y. 1996), *aff'd,* 108 F.3d 1370 (2d Cir. 1997), were both decided prior to the SEC's *Kapps* Amicus Brief and related

13

decision by the Fifth Circuit.[4] *In re TVIX Securities Litigation*, 25 F. Supp. 3d 444 (S.D.N.Y. 2014), does not even mention the concept of "firm-specific" information or that its opinion was inconsistent with the SEC's position that the relevant issue is whether undisclosed facts were material, or the Fifth Circuit's related decision in *Kapps*.  Indeed, this Court itself has previously adopted the reasoning of *Kapps* in deciding the same issue.  *See Alpha Capital Anstalt*, 2014 WL 6466994, at \*9 & n.17 (citing *Kapps, supra* and noting that "the SEC requires an issuer to disclose certain 'trends' that could affect its business, and in appropriate circumstances this requirement may extend to certain trends that are ***not firm-specific*** or are publicly available") (emphasis added)).

In addition, Defendants' analysis ignores that the material facts at issue in the Registration Statement relate to ZIV, SPVIXMTR and the VIX Futures market, as demonstrated by the numerous disclosures relating to those matters.  Thus, for example, the Registration Statement states that ZIV could be a "suitable investment" for a person "seek[ing] an investment with a return linked to the performance of the [Mid-Term VIX] Index [or] willing to accept the risk of fluctuations in volatility in general and in the level of the [Mid-Term VIX] Index in particular[.]" Complaint ¶57.  Similarly, the Registration Statement specifically discussed the hedging activities of Credit Suisse and other market participants in the VIX Futures market.  Complaint ¶58. However, completely absent from those factual discussions is any disclosure concerning the

---

[4]   Those cases are also factually distinguishable.  The non-firm specific information allegedly omitted from the prospectus in *Cosmas* related to the comparative efficiencies of the Australian and the United States Stock markets.  1993 WL 800778, at \*1.  Including such an analysis, *Cosmas* concluded, would have resulted in a "flood of collateral data" and thus need not have been disclosed.  *Id.*  Here, the undisclosed information was neither theoretical nor voluminous.  *Phillips* granted summary judgment and recognized only that an underwriter "had no duty to report readily available industry trends." 933 F. Supp. at 321.

liquidity limitations of the VIX Futures market in the event of a significant movement in SPVIXMTR.  *See* Complaint ¶¶28-46.

### 2. Defendants Fail to Demonstrate That the Undisclosed Facts Were Part of the "Total Mix of Information" Known to Plaintiffs

Defendants seek to obviate the need for disclosure by claiming that those facts were part of the "total mix of information" and, therefore, known by Plaintiffs.  Defs. Memo. at 13.  However, as this Court has previously held, "case law does not support the sweeping proposition that an issuer of securities is never required to disclose publicly available information."  *Alpha Capital Anstalt*, 2014 WL 6466994, at *9 (quoting *N.J. Carpenters*, 709 F.3d at 127; *Litwin*, 634 F.3d at 718).[5]  Instead, the relevant inquiry, "whether Plaintiff reasonably should have been aware" of the relevant facts, cannot be resolved as a matter of law on a motion to dismiss.  *Alpha Capital Anstalt*, 2014 WL 6466994, at *11 (citing *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 305 (S.D.N.Y. 2011); *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir. 1997)).  Here, Defendants' assertion that Plaintiffs were on notice of the relevant facts is premised on SPVIXMTR's price performance in a single day's trading in June 2016.  Defs. Memo. at 14 (citing Complaint ¶34).  However, those facts plainly are not ones "where 'basic inquiries would have revealed the truth' or where the plaintiff was 'practically faced with the facts when entering a transaction.'" *Alpha Capital Anstalt,* 2014 WL 6466994, at *11 (quoting *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 80 F. Supp. 2d 41, 57 (E.D.N.Y. 2011)).

---

[5]    *See also Alpha Capital Anstalt*, 2014 WL 6466994, at *9 & n.17 (citing *United Paperworkers Int'l Union v. Int'l Paper Co.,* 985 F.2d 1190, 1199 (2d Cir. 1993) (stating that "the mere presence in the media of sporadic news reports . . . should not be considered to be part of the total mix of information that would clarify or place in proper context the company's representations in its proxy materials"); *Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726, 736 (2d Cir. 1987) ("There are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a . . . prospectus on the basis that the information is public knowledge and available to them.")).

Instead, as this Court has previously observed, the cases supporting "Defendants' position involve disclosures that appear to be more obviously accessible than the relatively obscure disclosures at issue here." *Alpha Capital Anstalt*, 2014 WL 6466994, at *9 & n.16 (citing cases). *Garber v. Legg Mason Inc.*, 347 F. App'x 665 (2d Cir. 2009), upon which Defendants rely, demonstrates how far afield Defendants are from establishing Plaintiffs' knowledge of the adverse facts. In *Garber*, the offering took place on March 6, 2006, with the relevant facts reported in, among other places, "three statements filed with the SEC," including one days earlier on February 24, 2006. *Id.* at 668. Here, in contrast, the relevant facts were never disclosed in an SEC filing but, instead, were uncovered by Plaintiffs' counsel in investigating this action.[6]

*Set Capital*, based upon similar facts, held that the information was, in fact, part of the total mix of information available to the plaintiffs in that action. However, Plaintiffs respectfully submit that *Set Capital* was incorrectly decided as it relates to this issue and is fundamentally inconsistent with this Court's careful analysis of controlling legal principles in *Alpha Capital Anstalt*. This is further demonstrated by *Set Capital* relying on *In re Merrill Lynch & Co. Research Reports Securities Litigation*, 272 F. Supp. 2d 243, 250 (S.D.N.Y. 2003), a case also cited by Defendants in support of this very same argument, which this Court previously carefully and thoughtfully distinguished as involving widely disseminated facts reported in multiple major media outlets – something not present in this action. *Alpha Capital Anstalt*, 2014 WL 6466994, at *9 & n.16.[7]

---

[6]   *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017), upon which Defendants seek to rely, is also very far afield from the facts of this action. Instead, in *Stadnick*, the underlying facts were clearly disclosed and known by plaintiffs, with the Second Circuit merely concluding that those facts rendered the undisclosed information relating to various financial metrics immaterial as a matter of law.

[7]   *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288 (N.D. Ala. 2019), dismissed a similar claim, finding that the plaintiff had failed to allege particularized factual allegations supporting Defendants' knowledge of these facts. *Id.* at 1317. The plaintiffs there also alleged fraud,

In addition, *Set Capital* is factually distinguishable from this action because it involved XIV, with three well publicized movements of more than 30% in reaction to underlying changes in SPVIXSTR. *See* Complaint ¶33. Here, in contrast, there had been a single aberrant change in SPVIXMTR of 6% on a single day. *See* Complaint ¶34. These facts were obviously of a different magnitude that would have received different levels of attention by investors.

### 3. Defendants Also Owed a Separate and Independent Affirmative Duty to Disclose Based Upon Governing SEC Regulations

Plaintiffs allege that Defendants owed a separate and independent duty to disclose the material adverse facts at issue in this action based upon the affirmative disclosure requirements of Items 303 and 105 of SEC Regulation S-K. Complaint ¶¶63-64. This duty to disclose is independent of the one created by direct statements addressed to the relevant facts but which "omitted to state a material fact required . . . to make the statements [in the Registration Statement] not misleading . . . ." 15 U.S.C. §77k(a).

Defendants contend that Items 303 and 503 (formerly Item 105) of SEC Regulation S-K did not independently require disclosure of the facts at issue in this case because Plaintiffs failed to properly allege Defendants' knowledge of those facts.[8] Defendants' argument, however, misapprehends controlling principles of law which do not require the pleading of scienter with the specificity required by Fed. R. Civ. P. 9(b) or the heightened pleading requirements of Section

---

subjecting themselves to pleading fraud with particularity. *Id.* at 1300. However, particularized allegations of Defendants' knowledge are not at issue in this action because Plaintiffs did not allege any violation of the Exchange Act and, instead, limited their claims to violations of the Securities Act. *See* Complaint ¶74 ("This Count does not sound in fraud. This Count expressly disavows any allegations of fraud and is based solely upon Defendants' failure to disclose material adverse facts.").

[8]     Defendants also contend that the Registration Statement properly disclosed all relevant facts (*see* Defs. Memo. at 15), an argument which Plaintiffs have previously addressed. *See* Point I.A, *supra.*

21D of the Exchange Act.  Instead, all Plaintiffs are required to do is to "plausibly allege[]" that Defendants knew of the underlying facts.  *See, e.g.*, *Panther Partners*, 681 F.3d at 116.

*In re Coty Inc. Securities Litigation*, No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016), a case relied upon by Defendants (*see* Defs. Memo. at 16) employs the same "plausibly allege[]" standard.  *See id.* at *7.  In that case, the claim failed because the plaintiffs' allegations were insufficient to establish a trend, and insufficient to establish knowledge of any trend when the registration statement became effective.  *Id.*  Here, in contrast, Credit Suisse was a major participant in the VIX Futures market and, therefore, can be presumed to have known the relevant facts concerning the prior spikes in the VIX Futures market.  *See, e.g.*, Complaint ¶¶32-34.  In addition, Plaintiffs allege that Defendants had access to the information concerning Credit Suisse's hedging, and were able to observe changes to markets in hedging from other ETP sponsors.  *See* Complaint ¶31.

### D. The Undisclosed Information Existed at the Time of the Registration Statement

Defendants do not, nor could they reasonably, dispute that the underlying undisclosed facts relating the VIX Futures market lacking the necessary liquidity to handle rebalancing in connection with large movements in SPVIXMTR existed at the time of the Registration Statement.  Therefore, it is beyond cavil that Plaintiffs have properly alleged this element of a Section 11 claim.

## II.   PLAINTIFFS PLAUSIBLY ALLEGE LOSS CAUSATION EVEN THOUGH IT IS NOT AN ELEMENT OF A SECTION 11 CLAIM

It is black-letter law that "loss causation is not an element of a claim under either Section 11 or 12."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 571 (S.D.N.Y. 2009) (collecting cases).  Accordingly, "Plaintiffs are not required to plead loss causation in the Complaint."  *Id.* at 572; *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 273 (S.D.N.Y. 2007).  For this reason alone, Defendants' arguments fail.  *See*, *e.g.*, *Giant*, 643 F. Supp. 2d at 571-

72; *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 719 (S.D.N.Y. 2013) ("Plaintiff is not required to allege loss causation in order to withstand a motion to dismiss claims under Sections 11 and 12(a)(2)."). Indeed, Defendants acknowledge that in a Section 11 case, loss causation constitutes an affirmative defense (*see* Defs. Memo. at 19) and fail to cite a single case in which a Section 11 complaint has ever been dismissed for failure to properly allege loss causation.[9]

*Sharette* is also instructive. There, the plaintiffs alleged that the defendants misrepresented that "the Credit Suisse Defendants would use the ECD Stock solely to allow investors to 'hedge' their positions in the Convertible Notes, when in fact Credit Suisse planned to facilitate investors' massive, coordinated short sales of ECO Stock." 127 F. Supp. 3d at 104. Loss causation was sufficiently pled where the complaint alleged that the risks to investors materialized when the price of the stock plummeted as a result of Defendants' successful efforts to facilitate the short sales. *Id*.

In sum, Defendants' theory of loss causation raises issues of fact that are improper to resolve on a motion to dismiss. *See Giant*, 643 F. Supp. 2d at 573 ("Defendants will have the opportunity to prove, at the appropriate stage in the proceedings, that a portion of the damages suffered by Plaintiffs was caused by the theory they advance").[10] Indeed, even in cases arising under Section 10(b) of the Exchange Act, loss causation is adequately alleged so long as plaintiffs provide "some indication that the drop in [its] stock price was causally related" to the underlying

---

[9]     *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998), the only case granting summary judgment on loss causation grounds upon which Defendants rely, is not on point because the case did not assert any claims arising under Section 11 of the Securities Act.

[10]     As explained above, Defendants provided only generalized warning about hedging and failed to disclose their intended plan to create a liquidity gap in VIX Futures, which was all but certain to damage the investors in ZIV.

misrepresentation. *Mass Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 240 (1st Cir. 2013) (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1026 (9th Cir. 2005)); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016) (the truth, and the related loss causation, can be constructively revealed). Here, Plaintiffs have clearly done so (*see, e.g.*, Complaint ¶¶49-50), and Defendants' arguments to the contrary simply rehash their prior arguments with respect to their duty to disclose being limited to "firm-specific" facts and are infirm for the same reasons. *See* Point I.C.1, *supra*.

Finally, Defendants loss causation argument depends upon distorting the relevant facts. Specifically, without explanation, Defendants end their discussion with ZIV closing at $74.54 on February 5, 2018. *See* Defs. Memo. at 7. That ignores Plaintiffs' allegation that ZIV fell further to $65.00 when markets opened on February 6, 2019, "as a result of the market imbalances" caused by price insensitive hedging and a lack of liquidity. Complaint ¶51. That after-market decline was plausibly caused by the undisclosed liquidity issues with VIX futures as clearly pled, and the extent to which the earlier decline unquestionably relates to the liquidity issue will be the subject of expert testimony based upon further factual discovery.

## III.   PLAINTIFFS PLAUSIBLY ALLEGE CONTROL PERSON CLAIMS

Defendants contend that they have no control person liability because Plaintiffs have failed to properly allege a primary violation of Section 11, the control status of each of the persons named as a control person, and their culpable participation in the alleged underlying violation of Section 11. Defendants, however, are in error with respect to each of these arguments.

As an initial matter, Plaintiffs plausibly allege a Section 11 claim. *See* Section I, *supra.* The same is true of the control status of Defendants Thiam and Mathers, respectively Credit Suisse's CEO and CFO, who were the highest-ranking officers of Credit Suisse. *See* Complaint ¶¶9-10. That is sufficient basis upon which to plausibly allege control status. *See, e.g.*, *Police &*

20

*Fire Retirement System of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 231-32 (S.D.N.Y. 2009) (dismissing claims against independent directors, but concluding that control person claims against a company's chief financial officer and chief executive officer plausibly establish for Section 15 liability).

*Sloane Overseas Fund, Ltd. v. Sapiens International Corp.*, *N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996), upon which Defendants rely, is not on point because *Sloane* only held that director status standing alone, *i.e.,* being an independent director, does not establish control person status. Here, however, as discussed above, Thiam and Mathers were not only members of Credit Suisse's Executive Board but were also Credit Suisse's CEO and CFO. Complaint ¶¶9-10; *see also SafeNet, supra; In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 488 n.51 (S.D.N.Y. 2005) (distinguishing *Sloane* and similar cases as involving "an outside director or some figure other than an internal officer").

Defendants also err in contending that culpable participation is an element of a control person claim such as the one asserted here, arising under Section 15 of the Securities Act. The plain language of Section 15 does not contain any "culpable participation" requirement which as a matter of well-settled statutory interpretation should end the inquiry. *See, e.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 n.24 (S.D.N.Y. 2007) (rejecting an argument that "culpable participation" is an element of a claim under Section 15). In addition, the very concept of imposing a culpable participation element is inconsistent with the Securities Act dispensing with the need for alleging scienter with respect to primary claims. *See, e.g.*, *McKenna v. Smart Techs. Inc.*, No. 11 Civ. 7673 (KBF), 2012 WL 1131935, at *21 (S.D.N.Y. Apr. 3, 2012) ("Importing the scienter requirement into a section 15 claim every time a complaint sounds in fraud would do away with the statute as Congress intended it."). Accordingly, a "majority of judges in this District" have

21

held culpable participation is not an element of a Section 15 claim.  *In re Deutsche Bank AG Sec.*

*Litig.*, No. 09 CV 1714 (DAB), 2016 WL 4083429, at \*36 (S.D.N.Y. July 25, 2016).

## CONCLUSION

Therefore, for all the reasons set forth above, Defendants' motion to dismiss should be

denied.

DATED: December 20, 2019

Respectfully submitted,

By:  */s/* Jeffrey S. Abraham
Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: JAbraham@aftlaw.com
          MKlein@aftlaw.com


By:  */s/* Jeremy A. Lieberman
Jeremy A. Lieberman
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

**Attorneys for Plaintiffs**

22