**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JULIAN RUBINSTEIN, BARBARA ANTINORO AND
DAVID FLEER Individually and on Behalf of All
Others Similarly Situated,

PLAINTIFFS,

v.

CREDIT SUISSE GROUP AG, CREDIT SUISSE AG,
CREDIT SUISSE SECURITIES (USA) LLC, TIDJANE
THIAM, AND DAVID R. MATHERS,

DEFENDANTS.

1:19-cv-01069-VEC

**Oral Argument Requested**

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR**
**FAILURE TO STATE A CLAIM**

CAHILL GORDON & REINDEL LLP
   Herbert S. Washer
   David G. Januszewski
   Peter J. Linken
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 259-5420

*Attorneys for Defendants Credit*
*Suisse Group AG, Credit Suisse AG,*
*Credit Suisse Securities (USA) LLC,*
*Tidjane Thiam, and David R.*
*Mathers*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................................1

ARGUMENT ................................................................................................................................1

I.  AS OTHER COURTS HAVE HELD, THE REGISTRATION
    STATEMENT ADEQUATELY WARNED OF ALL RELEVANT
    RISKS.................................................................................................................................1

    A.  Prior Cases Dismissing Analogous Section 11 Claims Are
        Directly on Point ...................................................................................................2

    B.  Plaintiffs' Effort to Distinguish Their Claim Fails, as the
        Registration Statement Did Not Misstate or Omit Any Material
        Facts ......................................................................................................................4

    C.  The Total Mix of Information Included Publicly Available
        Data Concerning ZIV ...........................................................................................6

II. PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF
    REGULATION S-K.............................................................................................................8

III. PLAINTIFFS FAIL TO ALLEGE ANY LOSS CAUSATION...................................9

IV. PLAINTIFFS' CONTROL PERSON CLAIMS ARE INADEQUATE .....................10

CONCLUSION ...........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*In re Allied Capital Corp. Sec. Litig.*,
   2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003)................................................................8

*Alpha Capital Anstalt* v. *New Generation Biofuels, Inc.*,
   2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014) ........................................................6n

*Amorosa* v. *AOL Time Warner Inc.*,
   409 F. App'x 412 (2d Cir. 2011) (Summary Order)................................................9

*Amorosa* v. *Ernst & Young LLP*,
   672 F. Supp. 2d 493 (S.D.N.Y. 2009)...................................................................10

*Bonilla* v. *Smithfield Assocs. LLC*,
   2009 WL 4457304 (S.D.N.Y. Dec. 4, 2009) ........................................................10

*In re Coty Inc. Sec. Litig.*,
   2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ........................................................9

*Halbert* v. *Credit Suisse AG*,
   402 F. Supp. 3d 1288 (N.D. Ala. 2019) ......................................................... 1, 2-3

*Kapps* v. *Torch Offshore, Inc.*,
   379 F.3d 207 (5th Cir. 2004) ......................................................................... 7-8

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)....................................................................7

*Meyer* v. *JinkoSolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014)...................................................................................5

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010)...................................................................................5

*Panther Partners Inc.* v. *Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012)...................................................................................9

*In re Petrobras Sec. Litig.*,
   152 F. Supp. 3d 186 (S.D.N.Y. 2016).................................................................10

*In re Proshares Tr. II Sec. Litig.*,
   2020 WL 71007 (S.D.N.Y. Jan. 3, 2020) ....................................................... 1, 3-4

*Set Capital LLC* v. *Credit Suisse Grp. AG*,
   2019 WL 3940641 (S.D.N.Y. Aug. 16, 2019) ...............................................3, 5, 7

*Set Capital LLC* v. *Credit Suisse Grp. AG,*
    2019 WL 4673433 (S.D.N.Y. Sept. 25, 2019)................................................................1, 2

*Stadnick* v. *Vivint Solar, Inc.,*
    861 F.3d 31 (2d Cir. 2017)........................................................................................4n, 7

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,*
    774 F. Supp. 2d 584 (S.D.N.Y. 2011).......................................................................... 9-10

*In re TVIX Sec. Litig.,*
    25 F. Supp. 3d 444 (S.D.N.Y. 2014)...............................................................................1

*Wilson* v. *Merrill Lynch & Co.,*
    671 F.3d 120 (2d Cir. 2011)..........................................................................................6n

*Y-GAR Capital LLC* v. *Credit Suisse Grp. AG,*
    2020 WL 71163 (S.D.N.Y. Jan 2, 2020) .......................................................................1

## PRELIMINARY STATEMENT

Plaintiffs' Section 11 claim is premised entirely upon the allegation of an untrue statement or omission of a material fact in the Registration Statement at the time of its issuance.[1] No less than three other federal courts have dismissed substantially identical Section 11 claims predicated upon the exact same Registration Statement, and this result has followed regardless of whether the claims were measured against the pleading standard of Rule 8(a) or Rule 9(b). *See Set Capital LLC* v. *Credit Suisse Grp. AG*, 2019 WL 4673433 (S.D.N.Y. Sept. 25, 2019) ("*Set Capital Order*"), *appeal filed*, No. 19-3466 (2d Cir. Oct. 18, 2019); *Y-GAR Capital LLC* v. *Credit Suisse Grp. AG*, 2020 WL 71163 (S.D.N.Y. Jan. 2, 2020), *appeal filed*, No. 20-441 (2d Cir. Feb. 4, 2020); *Halbert* v. *Credit Suisse AG*, 402 F. Supp. 3d 1288 (N.D. Ala. 2019); *cf. In re Proshares Tr. II Sec. Litig.*, 2020 WL 71007 (S.D.N.Y. Jan. 3, 2020); *In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC* v. *Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) (Summary Order).[2]  Because the Registration Statement fully disclosed all material risks associated with the ZIV ETNs, and with Plaintiffs now having abandoned a tenuous manipulation theory (*see* Opp. Br. at 6 n.2), the Complaint should be dismissed.

## ARGUMENT

### I.    AS OTHER COURTS HAVE HELD, THE REGISTRATION STATEMENT ADEQUATELY WARNED OF ALL RELEVANT RISKS

As demonstrated in Defendants' moving brief, Plaintiffs' Section 11 claim is precluded by the robust and detailed disclosures in the Registration Statement concerning, *inter alia*, the potential effects of rebalancing and hedging activity in connection with the ZIV ETNs. *See* CS Br. at 4-7, 8-12.  These disclosures made plain that Credit Suisse, and others in the market,

---

[1]    Capitalized terms used and not defined herein have the meaning ascribed in Defendants' moving brief.

[2]    Unless otherwise indicated, internal citations and quotation marks are omitted.

would hedge exposure to the ZIV ETNs, and that such hedging activity could impact the value of the ZIV ETNs.  No reasonable investor can claim to have been misled by the Registration Statement with respect to the risks associated with that hedging.

Plaintiffs respond broadly with three arguments: (i) this Court should disregard the prior cases dismissing analogous Section 11 claims based on the same Registration Statement because claims in those cases sounded exclusively in fraud and were dismissed pursuant to the heightened pleading standard of Rule 9(b); (ii) while Credit Suisse disclosed substantial risks associated with hedging and rebalancing, it did not disclose that the underlying VIX futures market allegedly lacked the necessary liquidity to handle such hedging and rebalancing of risk; and (iii) the Court should not credit publicly available data as being part of the "total mix of information" available to investors.  None of these arguments has any merit.

A.  **Prior Cases Dismissing Analogous Section 11 Claims Are Directly on Point**

The primary thrust of Plaintiffs' argument is that the decisions of other courts dismissing Section 11 claims premised upon this same Registration Statement are distinguishable because no heightened pleading standard applies to Plaintiffs' Section 11 claim.  *See* Opp. Br. at 7.  But Plaintiffs' argument is based on a false premise—that those other courts applied heightened pleading requirements.  *See id.* (misleadingly arguing that "the plaintiffs in *Set Capital* premised their action primarily, if not entirely, on manipulation claims arising under Sections 9(e) and 10(b) of the Securities Exchange Act of 1934," which "are subject to the heightened pleading requirements of Section 21D(b) of the Exchange Act"); *id.* at 16-17 n.7 (mischaracterizing the *Halbert* case as alleging only fraud "subjecting [the Halberts] to pleading fraud with particularity").  Those other cases involved, *inter alia*, nearly identical Section 11 claims based on the same Registration Statement, and the courts dismissed the Section 11 claims without any apparent application of Rule 9(b).  *See Set Capital Order*, 2019 WL 4673433, at *4; *Halbert*, 402

F. Supp. 3d at 1308-15; *see also Set Capital LLC* v. *Credit Suisse Grp. AG*, 2019 WL 3940641, at *11 (S.D.N.Y. Aug. 16, 2019) ("*Set Capital R&R*").

With regard to *Set Capital*, a simple comparison of the allegations made in the two cases confirms that the decision is directly on point.  Both *Set Capital* and this case concern the same allegations that Credit Suisse failed to disclose liquidity issues associated with the rebalancing and hedging of ETNs.  *Compare, e.g.*, Compl. ¶ 44 ("As the size of ZIV's and other ETP's rebalancing and hedging requirements grew, including through Defendants continuing to issue new ZIV notes, so too did the risk that the number of futures contracts that the volatility-related ETPs would need to trade shortly after the close of the market would simply be too large in relation to what the market could provide, creating a futures liquidity gap and, itself, driving prices."), *with Set Capital* Compl. ¶ 78 ("Credit Suisse continued to issue new XIV notes, despite knowing that it had already grown XIV too big to be adequately hedged by the relatively small VIX futures market, and that there were liquidity issues with VIX futures during the daily rebalancing period during afterhours trading.").  The court in *Set Capital* engaged in a thorough analysis of the Registration Statement and rejected these claims based upon the fulsome and robust disclosures provided to investors.  *See Set Capital Order*, 2019 WL 4673433, at *4 (finding the Registration Statement "explicitly disclosed the very liquidity risks about which [plaintiffs] claim to have been misled").  The Court should do the same here.

The rationale of *Set Capital* finds additional support in a recent decision by Judge Cote dismissing analogous Section 11 claims concerning similar ETNs.  In *In re Proshares Trust II Securities Litigation*, the exchange-traded fund at issue, like the ZIV ETNs here, derived value from indices that tracked expected market volatility.  2020 WL 71007, at *1.  The "gravamen" of the complaint was "that the Registration Statement was misleading because it failed to disclose

that the Fund's 'own conduct of rebalancing in an overly crowded VIX futures market could itself drive up the price of VIX futures contracts, the level of market volatility, and the level of the [VIX Short-Term Futures] Index — thereby driving down the value of SVXY shares.'" *Id.* at *7. Judge Cote rejected such allegations and dismissed the Section 11 claims because—as is the situation here—"[t]he Registration Statement disclose[d] the primary omission alleged by plaintiffs — that the late-afternoon rebalancing of the Fund's portfolio could cause illiquidity in the VIX futures contract market." *Id.* Judge Cote found it was "not necessary to determine which standard should be used to review plaintiffs' Section 11 claim" since "[t]he Section 11 claim fails regardless of what standard applies." *Id.* at *6.

**B. Plaintiffs' Effort to Distinguish Their Claim Fails, as the Registration Statement Did Not Misstate or Omit Any Material Facts**

Plaintiffs seek to sidestep these decisions by limiting their case to an alleged failure to disclose potential liquidity issues existing in the VIX futures market underlying the ZIV ETNs. *See* Opp. Br. at 10 ("[T]he gravamen of Plaintiffs' claim is that the VIX futures market lacked the necessary liquidity to handle the rebalancing and hedging associated with ZIV and other ETNs without independently adversely affecting ZIV's value.").[3] In so narrowly focusing their claim, Plaintiffs suggest that their liquidity-based claim was not specifically at issue in *Set Capital* and other cases. But it was, and Plaintiffs' gambit fails.

As explained in Defendants' moving brief, the Registration Statement repeatedly explained how anticipated hedging would impact the volume of the underlying index and that the value of the ETNs could be impacted by supply and demand fluctuations associated with the

---

[3]      Plaintiffs also suggest that the Court cannot resolve questions of materiality on a motion to dismiss. *See* Opp. Br. at 11. Plaintiffs are incorrect. *See, e.g.*, *Stadnick* v. *Vivint Solar, Inc.*, 861 F.3d 31, 37-39 (2d Cir. 2017) (reaffirming the materiality test in the context of Section 11 claims predicated upon a registration statement and affirming dismissal because "a reasonable investor would not have viewed [the defendant's] omission as 'significantly alter[ing] the "total mix" of information made available'").

hedging and rebalancing of risks.  *See* CS Br. at 6-7.  The Registration Statement warned that "[t]he hedging activity discussed above may adversely affect the level of the applicable underlying Index and, as a consequence, the market value of the ETNs and the amount payable at maturity, upon redemption or upon acceleration."  CS Br. at 6.  "It was also public knowledge that . . . the VIX-related ETN market had grown so large that it was impacting the value of the underlying futures" (*Set Capital R&R*, 2019 WL 3940641, at *12), which is the exact risk Plaintiffs allege was not disclosed here.  *See* Compl. ¶¶ 30, 36-39, 50.  The Registration Statement—especially when coupled with publicly available information—described a volatile security intended solely for sophisticated, short-term investors, that could drop precipitously in value even during the course of a single day.  Viewing these robust disclosures "together and in context," as required by Second Circuit precedent, Plaintiffs have not alleged any misstatement or omission of material fact.  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (materiality asks "[w]hether the defendants' representations, taken together and in context, would have misled a reasonable investor").

Plaintiffs' reliance on *Meyer* v. *JinkoSolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), as somehow supporting a claim that Credit Suisse did not disclose then-existing facts relevant to the liquidity risk, is misplaced.  Unlike in the present case, the *JinkoSolar* plaintiffs alleged actual knowledge of company executives by citing to and relying upon documentary evidence that established the existence of the omitted facts.  *Id.* at 251 ("The complaint alleges that in June 2010 JinkoSolar submitted a report to Chinese regulators about 'existing problems.'  This report . . . describes problems of a nature that is sufficient, if proven, to allow a trier of fact, absent contrary evidence, to draw an inference that the problems 'existing' as of June 8, 2010, were both present and substantial at the time of the May 13, 2010, offering.").  Plaintiffs here do not

- 5 -

allege the existence of any similar facts or materials.  Plaintiffs admit that as of the date of the Registration Statement, "the United States stock market . . . had been experiencing a period of historically low volatility, causing ZIV, VIX [sic] and similar Inverse ETPs tied to the performance of VIX Futures to perform well."  Compl. ¶ 35.  *JinkoSolar* is inapposite.[4]

### C.  The Total Mix of Information Included Publicly Available Data Concerning ZIV

Plaintiffs acknowledge throughout the Complaint that information, dating back to 2011, was publicly available concerning each risk they allege was omitted from the Registration Statement.  *See* Compl. ¶¶ 25-27, 32-34; CS Br. at 13-14.  Recognizing that the availability of such information dooms their claim—as has been held by the other courts dismissing similar VIX-based Section 11 claims—Plaintiffs seek to distance themselves from their own allegations by claiming such information could not be part of the "total mix of information" considered by investors.  As detailed herein, Plaintiffs are wrong in that assertion.  Regardless, Plaintiffs may not now disclaim publicly available information cited in their own Complaint.[5]

The prior decisions dismissing Section 11 claims predicated upon the Registration Statement make clear both that there existed a robust body of public information concerning the ETNs' performance and that Credit Suisse was under no obligation to disclose such information.

---

[4]     Contrary to Plaintiffs' assertions, *Wilson* v. *Merrill Lynch & Co.* is directly on point.  671 F.3d 120 (2d Cir. 2011).  In *Wilson*, Merrill Lynch disclosed that it "may routinely" place bids in auctions of certain auction rate securities where its actual policy was to place bids in *every* auction of those securities.  *Id.* at 132.  Plaintiffs claim *Wilson* is distinguishable because "the very facts alleged to have been omitted were disclosed."  Opp. Br. at 11.  The disclosures at issue in *Wilson* were substantially less detailed than those at issue in the instant case.

[5]     Plaintiffs are incorrect that this Court previously rejected the "total mix of information" analysis.  Opp. Br. at 2 (citing to *Alpha Capital Anstalt* v. *New Generation Biofuels, Inc.*, 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014)).  That analytical framework is supported by multiple Supreme Court and Second Circuit decisions.  This Court in *Alpha Capital* deployed the "total mix of information" framework to the particular facts of that case and merely declined to find that the total mix of information included materials that "were neither functionally accessible nor readily understood" because the specific reports at issue in that case were "relatively obscure."  *Id*. at 8-9 & n.16.  Here, Plaintiffs point to publicly available reports (Compl. ¶¶ 25-27), cite to public pricing information (Compl. ¶¶ 32-34) of the ZIV ETNs that traded on the NASDAQ exchange (Compl. ¶ 20), and acknowledge that the various pricing disruptions purportedly supporting their claims were "well publicized."  Opp. Br. at 17.  Such information plainly is within the "total mix of information" available to investors.

*Set Capital R&R*, 2019 WL 3940641, at \*4 ("The fact that the VIX-related ETN market had grown large enough to impact the price of underlying VIX futures was also public knowledge."); *id.* at \*12 ("It was also public knowledge that the cause was likely the fact that the VIX-related ETN market had grown so large that it was impacting the value of the underlying futures."); *see also* CS Br. at 13-14. "The fact that the Offering Documents did not relay this history was, therefore, not a material omission." *Set Capital R&R*, 2019 WL 3940641, at \*12; *see also Stadnick*, 861 F.3d at 38 ("The materiality of an omission must be assessed in light of the total mix of information in the public domain."); *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 249-50 (S.D.N.Y. 2003) ("Sections 11 and 12(a)(2) do not require the disclosure of publicly available information.").

Next, Plaintiffs rely on an amicus brief filed by the Securities and Exchange Commission over sixteen years ago in a Fifth Circuit case, *Kapps* v. *Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004). *See* Opp. Br. at 13. Plaintiffs cite the amicus brief to support their argument that Defendants' disclosures needed to speak beyond "firm-specific" information. Plaintiffs' citation is curious since they have abandoned any claim premised upon the alleged failure to disclose that the ZIV ETNs were subject to manipulation (*see* Opp. Br. at 6 n.2), which was the only claim with regard to which Defendants made an argument concerning the need to disclose "firm-specific" information. *See* CS Br. at 12-13. In any event, the actual decision in *Kapps* does not support the sweeping principle for which the amicus brief is cited by Plaintiffs. Indeed, the Fifth Circuit decision supports the Defendants here.

*Kapps* concerned a prospectus that disclosed natural gas prices had increased by approximately 133% during the period of February 1999 and June 2001, without disclosing that there had been a recent drop in those prices preceding issuance of the prospectus. 379 F.3d at

209.  The Fifth Circuit, focusing on "the fact that natural gas prices were in the readily available public domain" and that the defendant "made cautionary statements regarding the volatility of gas prices," affirmed dismissal of the Section 11 claim.  *Id.* at 209, 214.  Similarly here, as Plaintiffs concede, risks associated with volatility and potential manipulation with respect to the VIX were in the public domain.  With regard to the issue of a duty to disclose information that is not "firm-specific," the Fifth Circuit ruled only that "the SEC requires an issuer to disclose certain 'trends' that could affect its business, and *in appropriate circumstances* this requirement may extend to certain trends that are not firm-specific or are publicly available."  *Id.* at 215 (emphasis added).  This case does not present such a situation, however, since the Registration Statement provided explicit warnings regarding the nature of the ZIV ETNs, the potential for hedging and rebalancing exposure to the ZIV ETNs by "Credit Suisse and other market participants in the VIX Futures market" (Opp. Br. at 14), the potential for volatility in the value of ZIV, and the high likelihood that investors could lose their entire investment.  CS Br. at 4-7.

Finally, Plaintiffs point to decisions and statements by Blackrock, Nomura Holdings, and others regarding the sufficiency of their own disclosures concerning "similar investment products."  *See* Opp. Br. at 12; Compl. ¶¶ 52-55.  After-the-fact judgments of others as to their own reactions to, and commentary about, the market volatility of February 2018 are irrelevant here in light of Credit Suisse's robust disclosures regarding the possibility of such risks in the Registration Statement at issue.  *See In re Allied Capital Corp. Sec. Litig.*, 2003 WL 1964184, at *4 (S.D.N.Y. Apr. 25, 2003) ("That some other company reached a different valuation provides no reason to believe that its valuation was correct and [defendant's was] wrong.").

## II.   PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF REGULATION S-K

Plaintiffs do not dispute that knowledge is a required element of any claim alleging a violation of Regulation S-K (CS Br. at 14-18), choosing instead to mischaracterize Credit

Suisse's argument as requiring scienter.  *See* Opp. Br. at 17.  Credit Suisse did not argue that scienter is required, and the Second Circuit decision relied upon by Plaintiffs shows what is required (and what is missing from the Complaint) to plead knowledge.

The Second Circuit in *Panther Partners Inc.* v. *Ikanos Communications, Inc.*, found a Regulation S-K claim plausibly pleaded specifically because the complaint there alleged that: (i) the defendant company was "receiving an increasing number of calls" from customers putting it on notice of potential problems; (ii) the "Board of Directors were discussing the issue, and representatives from the Company were flying to Japan to meet with" customers concerning the problem; and (iii) "these customers accounted for 72% of [the defendant's] revenues in 2005." 681 F.3d 114, 121-22 (2d Cir. 2012).  Here, in contrast, Plaintiffs argue only that "Credit Suisse was a major participant in the VIX futures market and, therefore, *can be presumed* to have known the relevant facts."  Opp. Br. at 18 (emphasis added).  This is deficient as a matter of law. *See In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) ("[S]uch a conclusory assertion is insufficient to raise a plausible inference of knowledge. . . . Plaintiffs' Item 303 analysis boils down to an assertion that fourth quarter revenues were down and management had meetings about the company's performance so, therefore, management must have known of the bad numbers before the IPO.").

## III.   PLAINTIFFS FAIL TO ALLEGE ANY LOSS CAUSATION

Second Circuit precedent refutes Plaintiffs' argument that a Section 11 claim may not be dismissed for want of loss causation.  *See, e.g.*, *Amorosa* v. *AOL Time Warner Inc.*, 409 F. App'x 412, 416-17 (2d Cir. 2011) (Summary Order) ("The absence of loss causation is an affirmative defense to a section 11 claim, but it is here apparent from the face of the complaint.  It is thus a proper basis on which to dismiss the claim."); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 595 (S.D.N.Y. 2011) ("The Court, therefore, holds that this

theory does not adequately plead loss causation."); *Amorosa* v. *Ernst & Young LLP*, 672 F. Supp. 2d 493, 514 (S.D.N.Y. 2009) ("[I]t is clear from the face of the pleadings that plaintiff suffered no damages following the relevant corrective disclosure, and his Section 11 claim must be dismissed."), *aff'd sub nom. Amorosa*, 409 F. App'x 412.  Plaintiffs' Section 11 claim should be dismissed on this alternative ground.  *See* CS Br. at 18-20.

## IV.    PLAINTIFFS' CONTROL PERSON CLAIMS ARE INADEQUATE

Plaintiffs' failure to adequately plead a violation of Section 11 against anyone dooms their Section 15 claims against both Individual Defendants.  *See* CS Br. at 20-23.  In any event, Plaintiffs' Section 15 claims also fail because the two Individual Defendants are alleged to be liable as primary violators, and an individual's "own alleged primary violation cannot serve as the basis of a § 15 claim against him." *In re Petrobras Sec. Litig.*, 152 F. Supp. 3d 186, 198 (S.D.N.Y. 2016).  Plaintiffs do not respond to this argument in Credit Suisse's opening brief (CS Br. at 22), thus conceding the point.  *See Bonilla* v. *Smithfield Assocs. LLC*, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing "as a matter of law" claims that the plaintiff "effectively abandoned" by "fail[ing] to respond to" the defendant's arguments).  Lastly, Plaintiffs admit in their opposition that they do not plead anything even approximating culpable conduct by the Individual Defendants, but dispute there is any such pleading requirement.  *See* Opp. Br. at 21.  Plaintiffs are incorrect; their failure to plead culpable conduct by either Individual Defendant mandates dismissal of the Section 15 claims.  *See* CS Br. at 20-23.

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated:  February 14, 2020
        New York, New York

Respectfully submitted,

**CAHILL GORDON & REINDEL LLP**

By: /s/ David G. Januszewski

    Herbert S. Washer
    David G. Januszewski
    Peter J. Linken
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 259-5420
hwasher@cahill.com
djanuszewski@cahill.com
plinken@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG, Credit Suisse Securities (USA) LLC, Tidjane Thiam, and David R. Mathers*

.

- 11 -