USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
JULIAN RUBINSTEIN, BARBARA          :
ANTINORO and DAVID FLEER Individually   :
and on Behalf of All Others Similarly Situated,   :
                                                          :
                                    Plaintiffs,   :
                                                          :
            -against-                              :            19-CV-1069 (VEC)
                                                          :
                                                          :            OPINION AND ORDER
CREDIT SUISSE GROUP AG, CREDIT SUISSE   :
AG, CREDIT SUISSE SECURITIES (USA)   :
LLC, TIDJANE THIAM, and DAVID R.   :
MATHERS                              :
                                                          :
                                    Defendants.   :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiffs bring this securities class action on behalf of all investors who purchased or

acquired VelocityShares Daily Inverse VIX Medium-Term Exchange Traded Notes ("ZIV

ETNs") between June 30, 2017 and February 5, 2018.  Plaintiffs assert claims pursuant to

Sections 11 and 15 of the Securities Act of 1933, as well as Regulation S-K, alleging that

Defendants' Offering Documents failed to disclose certain risks associated with the ZIV ETNs.

*See* Amended Complaint, Dkt. 32 ("Am. Compl.").  Defendants move to dismiss Plaintiffs'

Amended Complaint for failure to state a claim.  *See* Dkt. 33.  Defendants argue that the Offering

Documents, and particularly the Pricing Supplement, included robust disclosures addressing the

precise risks that Plaintiffs claim caused their damages.  For the following reasons, Defendants'

motion to dismiss is GRANTED.  Plaintiffs' Amended Complaint is DISMISSED.

## BACKGROUND

The ZIV ETNs[1] at issue in this case were created and issued by Defendant Credit Suisse and were designed to inversely track the performance of the S&P 500 Mid-Term VIX Index. Am. Compl. ¶ 19.  The Volatility Index ("VIX index"), sometimes referred to as Wall Street's "fear index," or "fear gauge," is calculated by the Chicago Board of Exchange ("CBOE"), and it is a measure of the expected future volatility in the S&P 500 Index ("SPX").  *Id.*  ¶ 14.  The VIX index is based on real time pricing of SPX Options and is calculated by averaging the weighted prices of call and put options over a wide range of strike prices.  *Id.*  Although investors cannot invest directly in the VIX, as it is not an actual security, they can purchase VIX future contracts on the VIX index ("VIX Futures"), which trade over a seven-month expiration period.  *Id.* ¶¶ 15, 17.  Futures contracts allow investors to invest based on their assessment of likely future movement of the VIX index; the futures contracts settle on a single day based on the difference between the VIX index on that day and the strike price for the futures contract.  *Id.*  The Mid-Term VIX Index ("SPVIXMTR") "measures the return of a daily rolling long position" of VIX Futures expiring in four, five six, and seven months.  *Id.*  ¶ 18.  The Mid-Term VIX Index is less popular and less volatile than the S&P 500 VIX Short-Term Futures Index, which measures VIX Futures expiring in one and two-months.  *Id* ¶¶ 17, 18.  As noted, *supra,* the ZIV ETNs were designed to track the inverse performance of the SPVIXMTR; in other words, the value of the ZIV ETNs increased as the SPVIXMTR declined and vice versa.  *Id.* ¶¶ 18, 19.

The ZIV ETNs were issued by Credit Suisse pursuant to a registration statement, prospectus, prospectus supplement, and a pricing supplement, each of which was filed with the

---

[1]      An ETN is an exchange-traded unsecured debt obligation of a financial institution; its return is based on the performance of an underlying index. Inverse ETNs are similar instruments, but their value is calculated using the inverse of the performance of the underlying index.

SEC and each of which contained extensive disclosures regarding the risks of investing in and holding the ETNs.[2] *Id.* ¶¶ 56-59; Pricing Supplement ("PS"), Linken Decl., Dkt. 34 Ex A.  For example, the Pricing Supplement explained that the ZIV ETNs were intended for sophisticated, "knowledgeable" investors to use on a short-term basis, and that investors who chose to hold the ETNs for longer periods faced significant risks, including losing their entire investment.  *See, e.g.,* PS at 1 ("The ETNs are riskier than securities that have intermediate or long-term investment objectives, and may not be suitable for investors who plan to hold them for longer than one day"); PS at 10 ("[i]f the applicable underlying Index declines or increases, as applicable, investors should be willing to lose up to 100% of their investment); PS at 14 ("[Y]ou may lose all or a significant part of your investment in the ETNs.").  The Supplement also specifically warned that, if Credit Suisse exercised its right to accelerate the notes, investors would likely "lose part or all of [their] initial investment.  PS at 10.  As a result, the Supplement included bolded and underlined warnings, indicating that the ETNs were not appropriate for investors seeking a "guaranteed return" on their investment and that the "long term expected value" of the ETN was zero.  PS at 11, 16.

The Pricing Supplement further cautioned that the ETNs were not appropriate for investors who were "not willing to be exposed to fluctuations in volatility in general and in the level of the applicable underlying Index in particular."  PS at 11.  In an entire section devoted to "Risk Factors," the Pricing Supplement described the effect that market volatility could have on

---

[2]     Because the Pricing Supplement is referenced and quoted extensively in the Amended Complaint, it is deemed to be integral to the Amended Complaint and it will therefore be considered in deciding the motion to dismiss. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."); *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991) (courts may consider "public disclosure documents required by law to be filed, and actually filed, with the SEC").

the ZIV ETNs' returns and emphasized that investors "should proceed with extreme caution in considering an investment in the ETNs." PS at 14.  Specifically, the Supplement warned that the "Inverse ETNs ... are linked to the daily performance of the applicable underlying Index and include [] inverse [] exposure," such that "changes in the market price of the underlying futures will have a greater likelihood of causing such ETNs to be worth zero."  *Id.* at PS 28.  The Supplement highlighted that this risk could materialize within a single day.  *Id.* ("In particular, any significant increase in the market price of the underlying futures on any Index Business Day will result in a significant decrease in the Closing Indicative Value and Intraday Indicative Value of the Inverse ETNs.").

The Pricing Supplement also contained disclosures concerning Credit Suisse's intention to hedge its own exposure to the ZIV ETNs.[3]  *See* PS at 16 ("The daily rebalancing of the futures contracts underlying the Indices may cause the Issuer, our affiliates, or third parties with whom we transact to adjust their hedges accordingly.").  Moreover, the Supplement indicated that "this hedging activity could affect the value of the Index, and accordingly the value of the ETNs."  PS at 13.  As will be discussed *infra,* warnings regarding the impact of Defendants' hedging activity on the value of the ETNs were reiterated throughout; the Supplement stated that Defendants' hedging "will contribute to the trading volume of the underlying futures contracts and may adversely affect the market price of such underlying futures contracts and in turn the level of the applicable underlying index."  PS at 17; *see also* PS at 50.

---

[3]      The Pricing Supplement explained that Defendants' hedging activity involved "purchasing or selling short the underlying futures, listed or over-the-counter options, futures contracts, swaps, or other derivative instruments relating to the applicable underlying Index, the VIX Index, the S&P 500 Index, the component securities of the S&P 500 Index, or the underlying futures, or other instruments linked to the applicable underlying Index, certain exchange traded notes issued by Credit Suisse, the VIX Index, the S&P 500 Index, the component securities of the S&P 500 Index, or the underlying futures, and adjust the hedge by, among other things, purchasing or selling any of the foregoing, at any time and from time to time, and to unwind the hedge by selling any of the foregoing, perhaps on or before the applicable Valuation Date."  PS at 24.

This Court is neither the first nor the only court to analyze investors' Section 11 claims based on the securities at issue in this case. *See, e.g., Y-GAR Capital LLC v. Credit Suisse Grp. AG*, No. 19-CV-2827, 2020 WL 71163, at *5 (S.D.N.Y. Jan. 2, 2020) (holding that the Pricing Supplement for the ZIV ETNs contained "cautionary statements [that] directly addressed the risks that ultimately materialized," and that, "as a result, the alleged omissions are immaterial as a matter of law."); *Set Capital LLC v. Credit Suisse Grp. AG*, No. 18-CV-2268, 2019 WL 3940641, at *11 (S.D.N.Y. Aug. 16, 2019), *report and recommendation adopted, Set Capital LLC v. Credit Suisse Grp. AG*, No. 18-CV-2268, 2019 WL 4673433 (S.D.N.Y. Sept. 25, 2019) (finding the Pricing Supplement for these securities to be devoid of any material misstatements or omissions) *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1311 (N.D. Ala.  2019) (holding that the Pricing Supplement for these securities was "not misleading as a matter of law," and explaining that the disclosures were "transparent about the nature of Credit Suisse's hedging activities, the potential adverse consequences for investors, and the significant risks of acceleration and loss.").[4]

On February 5, 2018, the markets became volatile and the ZIV share price fell 14.5% from the prior day's closing value.  Am. Compl. ¶ 48.  Plaintiffs, who suffered damages as a result of the price drop, now assert claims for violations of Sections 11 and 15 of the Securities Act.  *Id.* ¶¶ 72-87.  Despite acknowledging several of the numerous disclosures contained in the

---

[4]      Plaintiffs argue that Defendants' reliance on the rulings in *Set Capital* and *Halbert* is misplaced because the plaintiffs in those cases "premised their action primarily, if not entirely, on manipulation claims arising under Sections 9(e) and 10(b) of the Securities Exchange Act of 1934," which are subject to heightened pleading requirements.  *See* Pls.' Opp., Dkt. 36 at 7, 16-17 n. 7.  Plaintiffs are incorrect.  While *Set Capital* and *Halbert* both involved fraud claims brought under Section 10(b), they also included Section 11 claims nearly identical to those in this case and premised on the same Pricing Supplement.  Both courts dismissed the Section 11 claims without any application of the heightened pleading standard.  *See Set Capital,* 2019 WL 4673433, at *4; *Halbert,* 402 F. Supp. 3d at 1308-15.  Moreover, the analysis of a statement's materiality is the same under Sections 10(b) of the Exchange Act and Section 11 of the Securities Act.  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-60 (2d Cir. 2010).

Pricing Supplement, *see id.* ¶¶ 57-62, Plaintiffs argue that the Supplement was materially false or misleading because it failed to adequately disclose the risks associated with the ZIV ETNs.  *Id.* ¶¶ 61-62.  Defendants respond that the disclosures sufficiently warned Plaintiffs of the risks and accordingly move to dismiss the amended complaint for failure to state a claim.  *See* Defs.' Mem. of Law, Dkt. 35.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).  Although the Court must accept as true all allegations in the complaint and make all reasonable inferences in favor of the non-moving party, the Court need not credit claims that are contradicted by documents incorporated in the complaint or publicly filed with the SEC.  *See Olkey v. Hyperiod 1999 Term Trust, Inc.*, 98 F.3d 2, 5-9 (2d Cir. 1996); *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 692 (S.D.N.Y. 2008).

### A.  Plaintiffs' Section 11 Claim Fails

Section 11 of the Securities Act of 1933 prohibits "materially misleading statements or omissions in registration statements filed with the SEC."  *In re Morgan Stanley Info. Fund Secs. Litig.,* 592 F.3d 347, 358 (2d Cir. 2010); *see* 15 U.S.C. § 77k(a).  A plaintiff "need not allege scienter, reliance, or loss causation" to establish a *prima facie* Section 11 claim.  *Id.* at 359.  Moreover, although a heightened pleading standard applies to securities fraud claims brought

under Section 10(b) of the Securities Exchange Act, a Section 11 claim need only satisfy the

basic notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  *Id.* at 358.

To determine whether a misstatement or omission is material, the Court must consider

whether "defendants' representations, taken together and in context, would have misled a

reasonable investor."  *Id.* at 360 (citing *Rombach v. Chang,* 355 F.3d 164, 172, n.7 (2d Cir.

2004)).  In other words, an omission is considered material if, "in light of the information already

disclosed to investors … there is a *substantial* likelihood that the disclosure of the [omitted

material] would have been viewed by the *reasonable* investor as having *significantly* altered the

total mix of information [already] made available."  *In re ProShares Trust Secs. Litig.,* 728 F.3d

96, 102 (2d Cir. 2013) (citations omitted and alterations and emphasis in original).  A plaintiff

may not plead a Section 11 claim "with the benefit of 20/20 hindsight" or base the claim on a

"backward-looking assessment" of the registration statement.  *Charter Twp. of Clinton Police &

Fire Ret. Sys. v. KKR Fin. Holdings LLC,* No. 08-CV-7062, 2010 WL 4642554, at *11 (S.D.N.Y.

Nov. 17, 2010) (citation omitted).

A Section 11 claim fails as a matter of law when a registration statement "warns of the

exact risk that later materialized."  *In re ProShares Trust Secs. Litig.,* 728 F.3d 96, 102; *see also

Elite Aviation LLC v. Credit Suisse*, 588 F. App'x 37, 38 (2d Cir. 2014) (affirming dismissal of

claims related to volatility-linked ETNs because the "Pricing Supplement clearly disclosed in

numerous, repeated, sometimes boldfaced warnings" the risks that ultimately materialized);

*Olkey*, 98 F.3d at 5  (affirming dismissal where the "prospectuses warn[ed] investors of exactly

the risk the plaintiffs claim was not disclosed.").

Here, although the complaint acknowledges some of the warnings included in the Pricing

Supplement, Plaintiffs claim that the disclosures were insufficient and that they were misled

about the risks of investing in the ZIV ETNs.  Specifically, Plaintiffs allege that: (1) Credit

Suisse misrepresented the extent of its hedging and the effect that such hedging activity might

have on the value of the ETNs; (2) the disclosures failed to indicate that the VIX Futures market

lacked the necessary liquidity to handle Credit Suisse's rebalancing and hedging activity; and (3)

that the Registration Statement did not adequately indicate that the ZIV ETN was an

inappropriate investment even for "investors managing their portfolios on a daily basis."[5]  Am.

Compl. ¶ 62.  The Court disagrees.  The Pricing Supplement adequately and repeatedly warned

investors of these exact risks associated with the ZIV ETNs.

i.     **The Pricing Supplement Adequately Disclosed Defendants' Hedging Activity
       and its Impact on the Value of the ETNs**

The Pricing Supplement clearly disclosed Defendants' intention to hedge its exposure to

the ZIV ETNs and the effects that such rebalancing and hedging activity could have on the value

of the ETNs.  In a section entitled "Can you tell me more about the effect of Credit Suisse's

hedging activity?," the Supplement stated that Credit Suisse expected to "hedge [its] obligations

under the ETNs through one or more of [its] affiliates."  PS at 13.  The Section continued to

expressly warn that "the costs of maintaining or adjusting this hedging activity could affect the

value of the Index, and accordingly the value of the ETNs."  *Id.*  This warning is repeated

numerous times throughout the Pricing Supplement; Plaintiffs acknowledge as much by quoting

one of the disclosures in their complaint.  Am. Compl. ¶ 60 (quoting the Supplement's warning

that "the daily rebalancing of the leverage amount of each ETN back to its target may cause us,

our affiliates, or third parties with whom we transact to adjust their hedges accordingly," and that

_____

[5]      Plaintiffs' opposition brief abandons Plaintiffs' claim that Defendants' allegedly failed to disclose that
SPVIXMTR was subject to manipulation.  *See* Pls.' Opp. at 6 n.2.

such hedging activity "will contribute to the trading volume of the underlying futures and may adversely affect the market price of such underlying futures."); *see also* PS at 50 ("The hedging activity discussed above may adversely affect the level of the applicable underlying Index and, as a consequence, the market value of the ETNs and the amount payable at maturity, upon redemption or upon acceleration.").  More specifically, the Pricing Supplement warned that "[Credit Suisse,] our affiliates, or third parties with whom we transact could receive substantial returns with respect to these hedging activities while the value of your ETNs decline or become zero."  PS at 24.  Thus, Plaintiffs' allegation that the registration statement failed to disclose that "Credit Suisse's own actions" were a "central factor which affected the market price of [ZIV] ETNs," Am. Compl. ¶ 62, is belied by the express language of the disclosures.  Defendants did not misrepresent the extent of its hedging or the effect that such hedging might have on the value of the ZIV ETN; the disclosures "more than adequately warned investors of the possible deleterious effect of Credit Suisse's hedging."  *Set Capital LLC*, 2019 WL 3940641, at *12; *see also Halbert,* 402 F. Supp. 3d at 1311 (finding the same Pricing Supplement to be "transparent about the nature of Credit Suisse's hedging activities, the potential adverse consequences for investors, and the significant risks of acceleration and loss.").  Because Defendants' disclosures expressly warned investors of the impact that Defendants' hedging activity might have, Plaintiffs' Section 11 claim fails as a matter of law.  *See In re TVIX Sec. Litig*, 25 F. Supp. 3d 444, 458 (S.D.N.Y. 2014) (holding that plaintiffs' claim that the offering documents failed to disclose certain risks was "rendered untenable by the more than 25 plain English warnings concerning the risks" of the investment).

Despite these many warnings, Plaintiffs argue that the disclosures regarding Defendants' hedging activity were misleading because they failed to declare with certainty that the hedging

9

"*would*, not just 'could' 'affect the value of the Index and accordingly the value of the ETNs"

and that the "daily rebalancing of the leverage amount of each ETN back to its target '*would*' not

just 'may' result in Credit Suisse adjust[ing] their hedges."  Am. Compl. ¶ 62.  The Court

disagrees.  The use of the word "may" rather than "would" in regards to Defendants' hedging

activity and the potential adverse impact on the value of the ETNs does not render the Pricing

Supplement misleading.  *See Set Capital LLC,* 2019 WL 3940641, at *12 ("the fact that Credit

Suisse did not project that its hedging was certain to adversely affect the XIV notes' value in the

future is not actionable"); *Y-GAR Capital LLC v. Credit Suisse Grp. AG,* No. 19-CV- 2827, 2020

WL 71163, at *5 (S.D.N.Y. Jan. 2, 2020) ("Defendants were not required, as Plaintiff asserts

they were, to go further, and state that the adverse effect of Credit Suisse's hedging on the value

of XIV notes was *inevitable*.") (emphasis added).  As noted *supra,* the Supplement contained

numerous, often boldfaced or underlined warnings regarding the hedging activity; the Pricing

Supplement expressly stated that the "trading activity associated with these hedging transactions

*will contribute* to the trading volume of the underlying futures contracts and may adversely affect

the market price of such underlying futures contracts and in turn the level of the applicable

underlying Index").  PS at 16-17 (emphasis added).  These warnings were "of sufficient

precision and clarity to alert prudent investors to the nature of the offerings and the risks

entailed." *Panther Partners, Inc. v. Ikanos Comm'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y.

2008); Defendants were "not required to predict the precise manner in which risks will manifest

themselves." [6]  *In re TVIX Sec. Litig*, 25 F. Supp. 3d at 457.

---

[6]       Plaintiffs also argue that "Defendants failed to disclose the 'feedback loop' created by [exchange traded products] and, instead, stated in the Registration Statement that they 'have no reason to believe that our or their hedging activities will have a material impact on the level of the applicable underlying Index, there can be no assurance that the level of the applicable underlying Index will not be affected.'" Am. Compl. ¶ 61.  Plaintiffs' have selectively excerpted that portion of Defendants' disclosures.  The full version of the disclosure states: "*although* we and our affiliates have no reason to believe that our or their hedging activities will have a material impact on the level of the applicable underlying Index, *there can be no assurance that the level of the applicable underlying Index*

Plaintiffs' narrower allegation that the Pricing Supplement failed to indicate that the VIX Futures market lacked the necessary liquidity to handle the rebalancing and hedging without adversely affecting ZIV's value, Am. Compl. ¶¶ 44, 62, is similarly undermined by the language of the disclosures.  The Pricing Supplement contained a section entitled: "The market price of your ETNs may be influenced by many unpredictable factors."  PS at 21.  Among the factors discussed in that section were the "volatility" or "liquidity of any option or futures contracts relating to the applicable underlying Index, the VIX index, the S&P 500 index, the component securities of the S&P 500 Index, or the underlying futures," as well as "supply and demand for the ETNs in the secondary market," and hedging activities.  PS at 21, 39.  More specifically, the Supplement warned that Defendants' hedging activity might "adversely affect the level of the applicable underlying Index and, as a consequence, the market value of the ETNs and the amount payable at maturity, upon redemption or upon acceleration."  *Id.* at 50; *see also* PS at 26 ("Futures markets like the CBOE, the market for the VIX futures, are subject to temporary distortions or other disruptions due to various factors, including the *lack of liquidity in the markets*, the participation of speculators, and government regulation and intervention.") (emphasis added).  Although Plaintiffs claim Defendants were required to expressly state that the "VIX Futures market lacked the necessary liquidity to handle the rebalancing and hedging associated with ZIV and other ETNs," Pls.' Opp. at 10, the securities laws do not require issuers to predict the precise manner in which disclosed risks will manifest themselves.  *Halbert,* 402 F. Supp. 3d at 1311; *see also In re ProShares Trust Sec. Litig.,* 889 F. Supp. 2d 644,  656 (S.D.N.Y.

---

will not be affected." PS at 50 (emphasis added).  Thus, when taken in context and in conjunction with the numerous other warnings throughout the Pricing Supplement, this statement adequately cautioned investors of potential risks. *See Panther Partners*, 538 F. Supp. 2d at 664 ("The securities laws do not require clairvoyance in the preparation of offering documents.").

2012) ("It is not a material omission to fail to predict future market performance.").[7]   Because Defendants' disclosures adequately warned investors about the "liquidity risks about which [plaintiffs] claim to have been misled," Plaintiffs fail to allege an actionable misstatement or omission. *Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 135 (2d Cir. 2011); *Set Capital,* 2019 WL 4673433, at *4 (rejecting Plaintiffs' claim that the Registration Statement failed to disclose the liquidity risks); *In re TVIX Sec. Litig,* 25 F. Supp. 3d at 458 (rejecting plaintiffs' claim that the disclaimers failed to include information about potential liquidity shortages in the market because "once Credit Suisse warned investors that the TVIX ETNs' price would be affected by changes in supply and demand …, it was not obligated to make a prediction as to the probability that this would occur.").[8]

Finally, as Plaintiffs acknowledge in their complaint, information concerning many of the risks associated with ZIV ETNs, about which Plaintiffs now complain, *see* Am. Compl. ¶¶ 30, 36-39, 50, was publicly available to investors.  *See, e.g.,* Am. Compl. ¶ 32 ("during at least three occasions over the last ten years, market volatility spiked significantly and VIX Futures prices spiked at the end of the trading day in a manner disproportionate to what would normally be

---

[7]     Moreover, Plaintiffs admit that, as of the date of the Registration Statement, the stock market "had been experiencing a period of historically low volatility" which caused ZIV and other similar inverse ETPs tied to the performance of VIX futures to perform well.  Am. Compl. ¶ 35.  Defendants were not required to *project* future volatility spikes and *predict* their effect on the value of the ZIV ETNs.  *See In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 452 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).

[8]     Although the Pricing Supplement may not have used Plaintiffs' desired language to warn investors that the market lacked the necessary liquidity, "it did warn of the result that Plaintiff[s] claim [the limited liquidity] produced: investors' loss of nearly their entire investment as a result of a sudden jump in volatility combined with Credit Suisse's hedging." *Y-Gar Capital LLC*, 2020 WL 71163, at *5.  Under the "bespeaks caution" doctrine, alleged omissions are "immaterial as a matter of law" if cautionary language in the offering documents is sufficiently clear to ensure that the alleged omissions would not "mislead a reasonable investor regarding the nature of the securities offered."  *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). Although the doctrine does not apply when "cautionary language did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss," *id.* at 359, here the Pricing Supplement's disclosures directly addressed the risks that ultimately materialized.  As a result, the alleged omissions are immaterial as a matter of law

expected."); *see also id.* ¶¶ 25-27, 32-35; *Set Capital LLC,* 2019 WL 4673433, at *4 (explaining

that "the previous spikes in volatility and their effect on the VIX Futures Index were public

information readily available to investors.").  The fact that that the Pricing Supplement did not

repeat this publicly available information is not a material omission.  *See Stadnick v. Vivint*

*Solar, Inc.,* 861 F.3d 31, 38 (2d Cir. 2017) ("The materiality of an omission must be assessed in

light of the total mix of information in the public domain."); *In re Merrill Lynch & Co., Inc.*

*Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 249-50 (S.D.N.Y. 2003) (Section 11 does

"not require the disclosure of publicly available information."); *In re TVIX Secs. Litig*, 25 F.

Supp. 3d at 451-52 ("Defendants [did not] have a duty to include forecasts 'based on a range of

historical VIX volatility[ ]' ... [because] historical volatility data [and] the volatility trends are

publicly available); *SRM Glob. Fund L.P. v. Countrywide Fin. Corp*., No. 09-CV-5064, 2010

WL 2473595, at *9 (S.D.N.Y. June 17, 2010) ("The facts here show that all the information

Plaintiff claims was concealed by Defendants was publicly available … and on these facts the

law renders Defendants' purported misstatements immaterial.") (citation and alterations

omitted).

     In sum, the Pricing Supplement adequately warned investors of the extent and effect of

Credit Suisse's hedging activities as well as the impact that it and myriad other factors, including

liquidity *vel non* in the underlying futures market, might have on the value of the ETNs.

**ii.**     **The Pricing Supplement Adequately Warned that the ETNs Were Inappropriate**
     **for Certain Investors**

     Plaintiffs argue that the Pricing Supplement did not adequately disclose that the ZIV

ETNs were not appropriate "even for investors … managing their portfolios on a daily basis."

Am. Compl. ¶ 62.  The Court disagrees.  As noted *supra,* the Supplement warned that the ZIV

ETN's were appropriate only for sophisticated, knowledgeable investors, that investors should not expect a "guaranteed return," PS at 11, and that "investors should be willing to lose up to 100% of their investment" in the face of price movement in the underlying index, *id*. at 10.  The disclosures specifically warned that the ETNs were only suitable for a "very short investment horizon"; the Pricing Supplement stated that the "relationship between the level of the VIX index and the underlying futures on the VIX index will begin to break down as the length of an investor's holding period increases, even *within the course of a single Index Business Day*."  PS at 15 (emphasis added).

In sum, the Pricing Supplement does not contain any material misstatements or omissions sufficient to support a section 11 claim.

**B.  Plaintiffs' Section 15 Claim Must Be Dismissed**

To state a claim under Section 15 of the Securities Act, a plaintiff must allege "a primary violation by a controlled person, and [] control by the defendant of the primary violator."  *In re Global Crossing, Ltd. Sec. Litig.,* 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004).  As such, a Section 15 claim must be dismissed in the absence of any primary liability.  *Id. at 358; Rombach*, 355 F.3d at 178  (claims brought under Section 15 of the Securities Act are "necessarily predicated on a primary violation of securities law.")  Here, as noted above, the complaint does not state a claim for primary liability under Section 11 of the Securities Act.  Thus, Plaintiff's Section 15 claim is dismissed.  *See Rombach 3*55 F.3d at 178 (because "the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims [under Section 15] must also be dismissed.").

### C. Plaintiffs' Regulation S-K Claim Fails

Plaintiffs allege that Defendants violated Items 303 and 105 of Regulation S-K by failing to disclose certain risks associated with the ZIV ETNs.  Am. Compl. ¶¶ 63-65.  Item 303 "imposes a disclosure duty where a trend, demand, commitment, event or uncertainty is both (1) presently known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operations." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 120 (2d Cir. 2012) (internal quotation marks omitted); 17 C.F.R. § 229.303(a)(1).  Item 105, formerly Item 503, requires a disclosure of the "most significant risk factors" associated with the security.  17 C.F.R. § 229.105.

Defendants argue that Plaintiffs have failed to adequately allege that Defendants *knew* of any undisclosed information concerning the risks of the ETNs.  *In re Noah Educ. Holdings, Ltd Sec Litig.,* 2010 WL 1372709, at *6 (S.D.N.Y. Mar. 31, 2010) ("Knowledge of a trend is an essential element triggering disclosure under Item 303."); *See In re Coty Inc. Sec. Litig.,* No. 14-CV-919, 2016 WL 1271065, at *5 (S.D.N.Y. Mar. 29, 2016) ("To demonstrate knowledge, a plaintiff must allege facts that raise a 'plausible inference' that the company's management was aware" of an undisclosed risk factor).  Although Plaintiffs concede that they are required to "plausibly allege that Defendants knew of the underlying facts," they maintain that because Credit Suisse was "a major participant in the VIX Futures market," it can be "presumed to have known the relevant facts concerning the prior spikes in the VIX Futures market."  Pls.' Opp. at 18.  This is conclusory and insufficient; Plaintiffs must demonstrate *actual* knowledge of an existing trend, event, or risk to allege violations of Section 303 and 105.  *Indiana Pub. Ret. Sys. v. SAIC, Inc*., 818 F.3d 85, 95 (2d Cir. 2016) ("The plain language of Item 303 confirms our previous assumption that it requires the registrant's actual knowledge of the relevant trend or

uncertainty."); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (rejecting Plaintiffs' Item 303 claim because it was based on a "conclusory assertion" that "fourth quarter revenues were down and management had meetings about the company's performance so, therefore, management *must have known* of the bad numbers before the IPO.") (emphasis added).  Because Plaintiffs fail to allege any plausible facts indicating that Defendants knew of any undisclosed risk factors, their Regulation S-K claims are dismissed.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiffs' complaint is DISMISSED.  The Clerk of Court is respectfully directed to close the open motion at docket entry 33 and terminate this case.

**SO ORDERED.**

**Date:   April 28, 2020**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[9]     The Court also notes that Plaintiffs' Regulation S-K claims fail in light of Defendants' robust disclosures. As noted, *supra*, the Pricing Supplement adequately warned Plaintiffs of the risks associated with the ZIV ETNs, including the impact that the daily rebalancing and hedging activity would have on their market value.  *See* Defs.' Mem. of Law at 16-17.